

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-27-2005

# Pazden v. Maurer

Precedential or Non-Precedential: Precedential

Docket No. 03-4236

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Pazden v. Maurer" (2005). *2005 Decisions*. Paper 460.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/460

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4236

MICHAEL PAZDEN,

Appellant

v.

SUSAN MAURER, Acting Commissioner, New Jersey
Department of Corrections;
T. MOORE, MR., Superintendent, East Jersey State Prison;
W. MCCARGO, MR., Acting Chairman, New Jersey State
Parole Board;
PETER HARVEY, Attorney General of the State of New
Jersey

_____

On Appeal from the United States District Court
for District of New Jersey, Pursuant to a Certificate of
Appealability
Granted By This Court
(Civil Action No. 00-cv-4435)
District Judge: Hon. John W. Bissell, Chief Judge

Argued: March 8, 2005

Before: NYGAARD[1], McKEE and RENDELL, <u>Circuit Judges</u>

(Opinion filed: September 27, 2005)

_____

Kevin McNulty, Esq.  (Argued)
Lawrence S. Lustberg
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102
<u>Attorneys for Appellant</u>

James F. Avigliano
Steven E. Braun, Esq. (Argued)
Passaic County Prosecutor's Office
Administration Building
401 Grand Street
Paterson, NJ 07505
<u>Attorneys for Appellee</u>

**OPINION**

_____

[1]Judge Richard L. Nygaard, Senior Circuit Judge effective July 9, 2005.

McKee, *Circuit Judge*

Michael Pazden appeals from the District Court's order denying his petition for writ of habeas corpus under 28 U.S.C. § 2254(a). Pazden was convicted in state court on a 119 count indictment involving "white-collar fraud" stemming from the sale of condominiums in Clifton, New Jersey. We are asked to determine if the trial court violated Pazden's Sixth Amendment right to counsel when the court denied defense counsel's request for a continuance and Pazden proceeded to trial *pro se*. For the reasons that follow, we hold that the trial court did violate Pazden's Sixth Amendment rights and that the state courts' determination to the contrary was both contrary to, and an unreasonable application of, clearly established law as proclaimed by the Supreme Court. Accordingly, we will reverse the District Court's denial of federal habeas relief and remand with instructions to grant a conditional writ.

## I. Background.[2]

From 1987 to 1990, Pazden worked for Riverview Village Inc., a corporation wholly owned by Robert Pazden, appellant's brother. Riverview was incorporated to develop, market, and sell a condominium complex in Clifton, New

---

[2] Since the District Court accurately and fully set forth the factual background of this habeas action, we take the liberty of excerpting much of this portion of our opinion from the opinion of the District Court. *See Pazden v. Maurer*, No. 00-4435, slip op. at 3-11 (D.N.J. Sept. 25, 2003).

Jersey. Between March 1989 and April 1990, Riverview contracted with purchasers for the sale of several individual units. After entering into those contracts, however, Riverview developed financial difficulties and ultimately failed. However, Riverview refused to return the deposits of numerous purchasers. It claimed that those purchasers had defaulted on their obligations under the agreements, and they were therefore not entitled to a refund. The corporation did, however, refund deposits to approximately 200 other purchasers.

On February 26, 1991, one of the prospective purchasers filed a private criminal complaint against Pazden charging him with theft by deception. Pazden was arraigned on that complaint on March 27, 1991.

Almost three years later, on December 7, 1993, Pazden was named in a 131-count indictment that arose from the same facts as the 1991 complaint. However, it added the additional 42 purchasers whose deposits had not been refunded.[3] Pazden asked for appointed counsel, and the court assigned John Schadell, an Assistant Deputy Public Defender, to represent him.

On October 3, 1995, Wanda Bartos replaced John Schadell as Pazden's court-appointed attorney in the criminal prosecution underlying the instant habeas action. Prior to trial

---

[3] In a second, related indictment, Pazden was charged with two counts of fourth degree uttering a forged instrument. He pleaded not guilty to all counts of both indictments.

in the Superior Court of New Jersey, Law Division, Passiac County, however, Ms. Bartos informed the court that, given her recent involvement in the case and the state's alleged refusal to provide discovery, she was unprepared to proceed to trial. Trial was scheduled to begin February 20, 1996. Specifically, Ms. Bartos explained:

> One of the claims [Pazden] makes is that we had failed to interview and contact the various witnesses that will be needed for this trial and that is true and was the basis of my application for a three month adjournment initially when I said I was not ready to and able to proceed with the case.
>
> When I first got the case from Mr. Schadegg, I asked for the witness list. There was no witness list in that file . . . .
>
> [The list of potential witnesses, when obtained from Pazden, contained] 560 names and it would have been virtually impossible for me to contact, to interview, to evaluate in assessing those witnesses appearing in that very, very short period of time.

5

App. 116-117.

In addition, in a letter she sent to the court, Ms. Bartos also contended that she had been hampered by the prosecution's refusal to furnish timely discovery as well as the piecemeal fashion that discovery was being provided.[4] She was particularly concerned about a discovery packet that the prosecution delivered on January 26, 1996, approximately three weeks before trial was to begin. That packet contained a document that pertained to the processing and approval of the corporation's Public Offering Statement by the Department of Community Affairs. It alerted Ms. Bartos to the existence of still more documents that had not been yet been turned over by the prosecution. Ms. Bartos explained to the court that, "[h]aving been alerted by this discovery provided by the Prosecutor's Office of the importance of these documents, defense counsel would not be acting in the best interest of the client nor providing able and effective counsel in proceeding to trial at this time." App. 252.

Based on all of these factors, Ms. Bartos requested a three-month postponement of the trial date. At a January 19, 1996 hearing, Ms. Bartos's co-counsel in the case, Mr. Smith,

---

[4]Over a fourteen month period, the prosecution provided the defense with almost 5,000 pages of discovery, including 1,787 pages in December, 1994, 2,502 pages in the fall of 1995, an additional 459 pages in the fall of 1995 and a packet of discovery that was delivered to the defense on January 26, 1996.

explained to the court:

> Judge, my first estimate of the number of witnesses that will be called by the defense may range anywhere to 50 to 150, and that is a first look at the case. There are at least 50 witnesses that I think we would be remiss if we did not call.
>
> Those witnesses have to – there may even be some outstanding documents that those witnesses have. Once those documents have been reviewed we need to interview those witnesses, and based on . . . the information they provide . . . there may be other witnesses that we would need to meet with and acquire documents from.
>
> . . .
>
> There are a number of outstanding requests for discovery. There may have been Court Orders by this Court for the State to turn over discovery. There are thousands of documents to be reviewed and I just don't see how, even with two attorneys working on this case it

7

> could be ready by the 13th, and
> certainly I've gone to my Deputy
> and requested some additional
> attorneys to see if we can move this
> case forward, and get it ready.

App. 262-64. Nevertheless, the court refused to postpone the trial.

Since the court would not delay the trial, and believing that he was then more familiar with the case than his attorney, given the witnesses and materials his attorney had not had an opportunity to explore, Pazden informed the court that he believed he had no alternative but to represent himself. The following exchange occurred as the court explained the dangers of proceeding *pro se*:

> The Court: And this is what you're sure you want to do?
>
> Mr. Pazden: Your Honor, I agree with what you said before. I know the facts of this case better than anybody else. I also agree that I will be at a disadvantage as far as my knowledge of law and the legal procedures, I feel I have no choice in this matter. There has been, up until the last few weeks no investigation done in this case.
>
> . . .

8

[A]s I sated before I believe I'm selecting the lesser of two evils. If Miss Bartos, given the level of preparation she's been allowed and given the late discovery, frankly, I think, I think the trial if it started today with Miss Bartos representing me would be a farce and mockery of justice.

. . .

My contention is she was prevented from giving me effective assistance by late discovery, very late discovery by the fact she wasn't appointed until three years after the arraignment; and by the fact that this Court hasn't given her the opportunity to review the discovery, to do a proper investigation.

I agree I'm selecting the lesser of two evils. I know the facts and Miss Bartos, if given an adjournment and given the opportunity would know the facts as well as I do and if she knew the facts as well as I do then I think we're prepared to go to trial.

. . .

If Miss Bartos is my counsel, the final decision is hers and I believe that some of

9

the decisions, and I don't want to go into our attorney-client relationship, but we disagree on some of those decisions and I think that disagreement would evaporate if she was given a chance to study the facts.

The Court:   Mr. Pazden, let me say again to you that it is my very distinct opinion that it is unwise for you to represent yourself and that you would be better served if Miss Bartos served as the attorney and you were available to supplement her . . .

You're not family [sic] with the Rules of Evidence and you're not familiar with the Court Procedure; you're certainly someone who's articulate and intelligent, that doesn't mean that you will do even an adequate job in representing yourself, but the consequences will fall on you if you are ill served in this capacity under the law as I read it, I can't save you from yourself. It's your choice.

I would strongly urge you not to represent yourself – in spite of that, is it still your decision to represent yourself and be your own lawyer?

Mr. Pazden:   Yes, it is, your Honor.

10

The Court:    And this decision is made by you entirely voluntarily on your part?

Mr. Pazden:   Yes, it is – well, again I'm selecting the lesser of two evils.

The Court:    All right.

App. 104-05, 108-09, 110-11.

In addition, in response to Pazden's claim that Ms. Bartos had not been afforded an adequate opportunity to prepare for trial, the court responded:

> I have personally witnessed that Miss Bartos has put in countless hours during the week and on weekends. She has a background in financial matters, and I frankly think you would be hard pressed to find another attorney who would devote themselves to this case the way she has and pour over this discovery the way she has.
>
> I personally am witness to that because she is assigned to this Court, aside from your case, this is where she is

11

assigned.

App. 108.

The trial court ultimately permitted Pazden to proceed to trial *pro se* with Ms. Bartos acting as stand-by counsel.  The court stated: "I'm satisfied that [Pazden's decision to represent himself] is something that is his voluntary choice.  That it's a decision that he feels in his best interest under all of the circumstances and that he is making intelligently."  Pazden represented himself at the ensuing trial, and was subsequently convicted on all 119 counts that were submitted to the jury.  He was thereafter sentenced to an aggregate prison term of sixteen years.

Pazden appealed to the New Jersey Appellate Division. Except for a remand to resolve a sentencing issue unrelated to the instant habeas petition, the Appellate Division affirmed the conviction, and the New Jersey Supreme Court denied review.

Pazden filed this  petition in the District Court on September 11, 2000.  The court thereafter dismissed it as a mixed petition because it contained both exhausted and unexhausted claims. *Pazden v. Maurer*, No. 00-4435, slip. op. at 28 (D.N.J. Sept. 6, 2001); *see Crews v. Horn*, 360 F.3d 146 (3d Cir. 2994) (discussing District Court's discretion to dismiss habeas petitions containing both exhausted and unexhausted claims). The court granted leave to file an amended petition that did not include the unexhausted claims, and Pazden filed a second petition containing only the exhausted claims on December 14, 2001.   In  the  amended  petition,  Pazden

12

challenged the legality of his 1996 New Jersey state criminal conviction on several grounds, including the two that are presently before us.[5] The District Court denied Pazden's petition and declined to issue a certificate of appealability. We thereafter granted a certificate of appealability allowing Pazden to appeal denial of his Sixth Amendment claim that he was denied the right to counsel, as well as his speedy trial claim. This appeal followed.

## II. Jurisdiction and Standard of Review.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254(a). Since the District Court dismissed Pazden's petition without conducting an evidentiary hearing, our review of the District Court's decision is plenary. *See Marshall v. Hendricks*, 307 F.3d 36, 50 (3d Cir. 2002). We apply the same standard of review as the District Court, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996).[6]

---

[5]The District Court's opinion enumerates the claims Pazden raised in his amended habeas corpus petition. *Pazden v. Maurer*, No. 00-4435, slip op. at 11-12 (D.N.J. Sept. 25, 2003).

[6] Since Pazden filed his petition after the effective date of AEDPA, the amendments to Title 28 contained in that act govern our review of Pazden's claim. *See Lindh v. Murphy*, 521 U.S. 320 (1997).

13

Under the relevant AEDPA amendments to § 2254:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

28 U.S.C. § 2254(d)(1). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court noted that "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id*. at 412. The Court explained:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to

14

. . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 412-13.

In *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999) (*en banc*), we explained that a federal habeas court makes two inquiries on habeas review under AEDPA:

15

First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent: that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

171 F.3d at 891 (citations omitted).

Under the *Matteo* framework, in analyzing the "contrary to" provision, we are required "first to identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Matteo*, 171 F.3d at 888. For a state prisoner to obtain habeas relief under the "contrary to" provision:

16

[I]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome. This standard precludes granting habeas relief solely on the basis of simple disagreement with a reasonable state court interpretation of the applicable precedent.

*Id.* (emphasis in original).[7]

If the federal habeas court determines that the state court decision was not contrary to the applicable body of Supreme Court

---

[7] However, "it is not necessary for the petitioner to cite factually identical Supreme Court precedent. Rather, the critical question is whether a Supreme Court rule--by virtue of its factual similarity (though not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations--can fairly be said to require a particular result in a particular case." *Matteo*, 171 F.3d at 888 (citation and internal quotations omitted).

17

law – either because the state court decision complies with the Supreme Court rule governing the claim, or because no such rule has been established – then the federal habeas court should undertake the second step of analyzing whether the decision was based on an unreasonable application of Supreme Court precedent.

*Matteo*, 171 F.3d at 889 (internal quotation marks omitted). Our "unreasonable application of" inquiry does not, however, authorize habeas relief simply because we might disagree with the state court's analysis, or because we would have reached a different result in the first instance. *Id*. The inquiry is also not intended to merely remedy "incorrect application of federal law." *Williams*, 529 U.S. at 410. Rather, the appropriate inquiry is whether the state court's application of Supreme Court precedent was "objectively unreasonable." *Matteo*, 171 F.3d at 889-90. "The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 890.

### III. Discussion.

Pazden argues that the state trial court violated his Sixth Amendment right to counsel by forcing him to chose between proceeding to trial without the requested continuance or proceeding *pro se*, and that his Sixth

18

Amendment right to a speedy trial was denied by the delay between his initial arraignment in 1991, his indictment in 1993, and his trial in 1996. Pazden contends that the state court's denial of his claims was contrary to, and an unreasonable application of, Supreme Court precedent. We agree that Pazden's right to counsel under the Sixth and Fourteenth Amendments was violated under the circumstances here.[8] We think it clear that, on this record, the state trial court's determination that Pazden's waiver of counsel was voluntary was both "contrary to" and "an unreasonable application of . . . clearly established" Supreme Court pronouncements in *Johnson* and *Faretta*.[9] Pazden's waiver was not a product of a free and meaningful choice. Thus, his decision to waive counsel and proceed *pro se* cannot be deemed voluntary.

---

[8] We affirm the District Court's denial of relief on Pazden's speedy trial claim substantially for the reasons set forth in the District Court's opinion. Accordingly, we need not discuss his speedy trial claim further.

[9] It appears from the record before us that the state trial court failed to even consider *Johnson* and its progeny in determining whether Pazden could constitutionally proceed to trial *pro se*. Rather, the trial court relied mainly on *State v. Gallagher*, 644 A.2d 103 (N.J. Super. 1994). As we discuss more fully below, in *Gallagher*, the Appellate Division based most of its analysis on *Faretta*, and only mentioned *Johnson* once in passing. *See Gallagher*, 644 A.2d at 107-112.

19

## A. The Applicable Legal Principles.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defense." U.S. Const. Amend. VI. Moreover, the Supreme Court has proclaimed that "the guiding hand of counsel" must be made available in criminal trials to those that can not afford to hire an attorney on their own. *United States v. Ash*, 413 U.S. 300, 308 (1973); *Gideon v. Wainwright*, 372 U.S. 335 (1963). "Compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." *Johnson v. Zerbst*, 304 U.S. 458, 467 (1938).

The Sixth Amendment is unique, however, because it not only guarantees a substantive right - the right to counsel - it also guarantees the converse right to proceed without counsel at trial. "[T]he Constitution does not force a lawyer upon a defendant." *Faretta v. California,* 422 U.S. 806, 814-15 (1975), (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279 (1943)). The Sixth Amendment thus embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel. *Buhl v. Cooksey,* 233 F.3d 783, 789 (3d Cir.2000). Concomitantly, proceeding to trial represented by counsel as guaranteed under the Sixth Amendment means that a defendant has not articulated a desire to waive that right and exercise his/her right to proceed *pro se.*

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" and must be the product of a free and meaningful choice. *Johnson*, 304 U.S. at

20

464. "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id*. In order to protect the right to counsel, the Constitution requires that any waiver of that right be the product of the voluntary exercise of free will. *Faretta*, 422 U.S. at 835.

> It is axiomatic that a criminal defendant's waiver of a constitutional right must be voluntary, knowing and intelligent. Therefore, the constitutional right of self-representation in a criminal case is conditioned upon a voluntary, knowing and intelligent waiver of the right to be represented by counsel.

*Buhl,* 233 F.3d at 789. "If in a habeas corpus hearing, [a petitioner] . . . convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ." *Johnson*, 304 U.S. at 469.

However, where appropriate, "[a] criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action." *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976). Indeed, a defendant cannot always obtain habeas relief by alleging that a waiver was not voluntary because the trial court denied a requested continuance and forced the defendant to decide

between proceeding *pro se* and proceeding with unwanted counsel.

Nevertheless,

> [a] clear choice between two alternative courses of action does not always permit a petitioner to make a voluntary decision. If a choice presented to a petitioner is constitutionally offensive, then the choice cannot be voluntary. A defendant may not be forced to proceed with incompetent counsel; a choice between proceeding with incompetent counsel or no counsel is in essence no choice at all. The permissibility of the choice presented to the petitioner . . . depends on whether the alternative to self-representation offered operated to deprive him of a fair trial.

*Wilks v. Israel*, 627 F.2d 32, 35 (7th Cir. 1980) (internal citations omitted).

Therefore, a reviewing court must be "confident the defendant is not forced to make a choice between incompetent counsel or appearing pro se." *United States v. Taylor*, 113 F.3d

22

1136, 1140 (10th Cir. 1997).[10] The "court [must] decide whether the defendant was bowing to the inevitable or voluntarily and affirmatively waiving his right to counsel." *United States v. Salemo*, 61 F.3d 214, 222 (3d Cir. 1995) (quotations omitted); *see also United States ex rel. Martinez*, 526 F.2d 750, 755-6 (2d Cir. 1975) ("appellant was given no freedom of choice to decide whether he wished to defend himself. His choice, if choice it can be called, was based entirely on his bowing to the inevitable.").

This imposes on the trial court, "the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *United States v. Peppers*, 302 F.3d 120, 130-31 (3d Cir. 2002). "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and

---

[10] In referring to defense counsel here as "incompetent" we in no way intend to suggest anything about her ability or professionalism. Rather, we are only referring to the fact that the circumstances here (including the prosecution's piecemeal approach to tendering discovery) put her in a position where she could not competently proceed to represent Pazden at trial absent more time to adequately prepare.

Indeed, from what we can determine from the trial judge's comments, Ms. Bartos is an exceptionally talented and professional attorney who would have done a commendable job of representing Pazden if she had been afforded a reasonable opportunity to prepare for trial.

23

comprehensive examination of all the circumstances under which such a plea is rendered." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948). In conducting this examination a court can evaluate the motives behind defendant's dismissal of counsel and decision to proceed *pro se*. *United States v. Stubbs*, 281 F.3d 109, 117 (3d Cir. 2002). Moreover, although the record here does not suggest that Pazden's request for a continuance was manipulative, we have cautioned that "even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights." *United States v. Welty,* 674 F.2d 185, 189 (3d Cir.1982); *see also Buhl*, 233 F.3d at 796.[11] Although, a trial court ruling on a request for a continuance may certainly consider such factors as "the importance of the

---

[11]In *United States v. Welty,* 674 F.2d 185 (3d Cir.1982), we explained the two part inquiry a trial court must make to determine if there is "good cause" to grant a requested continuance on the eve of trial to afford a defendant an opportunity to retain substitute counsel. Although *Welty* was decided on direct appeal, "[t]he same standard for determining whether a defendant waived his right to counsel applies in federal court habeas corpus review of state court proceedings. *Piankhy v. Cuyler*, 703 F.2d 728, 731 n.3 (3d Cir. 1983) (citing *Brewer v. Williams*, 430 U.S. 387 (1977)).

However, the *Welty* two part inquiry is not relevant here because it is clear from this record that Pazden did not request substitute counsel. Rather, he relented to the trial court's insistence that trial proceed, and went to trial without the benefit of counsel.

24

efficient administration of justice," *Buhl*, 233 F.3d at 797, we have also cautioned that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Martinez*, 526 F.2d at 755.

## B. Pazden's Request.

Here, Pazden argues that he "merely bowed to the inevitable" when he "opted to represent himself at the trial of this complex, 133-count indictment," because he was confronted with "the unconstitutional dilemma of either representing himself or proceeding to trial with assigned counsel who admitted being unprepared and unfamiliar with the record." Therefore, according to Pazden, his decision to waive counsel and represent himself was not "voluntary in the constitutional sense."[12]

As we noted above, Pazden's court-appointed attorney, Ms. Bartos, stated several times on the record that she could not be prepared to go to trial given the trial date. Specifically, Ms. Bartos contended that she was hampered by (1) the prosecution's refusal to furnish timely discovery; (2) the prosecution's furnishing of discovery in a piecemeal fashion and (3) her inability to interview all 560 witnesses on the witness list

---

[12]Pazden challenges only the voluntariness of his waiver, not whether his waiver was knowing and intelligent.

25

before trial was to begin.[13]   In a letter to the trial court dated January 29, 1996, Ms. Bartos explained that she would be requesting a postponement of the trial date because, *inter alia*,

> [o]n January 26, 1996, the Prosecutor's Office, in the guise of delivering discovery relevant to the new Indictment . . . delivered to defense counsel a packet of discovery . . . Items 13 through 37 obviously relate to [the old Indictment] and, while presumably in the possession of the Prosecutor during the duration of these proceedings, have only now been delivered to defense counsel on January 26, 1996 – some 18 days

---

[13]Ms. Bartos's co-counsel, Mr. Smith, explained to the state trial court that, "the number of witnesses that will be called by the defense may range anywhere to 50 to 150 . . . Those witnesses have . . . outstanding documents . . . we need to interview those witnesses . . . It's my opinion that . . . we will not be ready to try this case on February 13." Mr. Smith added, "[t]here are a number of outstanding requests for discovery . . . There are thousands of documents to be reviewed and I just don't see how, even with two attorneys working on this case it could be ready by the 13th."

App. 262.

26

prior to the date scheduled for trial. More importantly, a review of the information contained in Items 13 and 33 raise crucial issues concerning the processing and approval of the Public Offering Statement by the Department of Community Affairs and alert the defense to the existence of certain documents. These documents are not a portion of the discovery supplied by the Prosecutor's Office and are not in the possession of the defense. Having been alerted by this discovery provided by the Prosecutor's Office of the importance of these documents, defense counsel would not be acting in the best interest of the client nor providing able and effective counsel in proceeding to trial at this time.

App. 252.

In response to this discovery, Ms. Bartos issued a subpoena to obtain all the files of the Department of Community Affairs that pertained to the registration and approval of the Riverview Village project. She thereafter learned from an employee of Community Affairs that some of the documents were in the possession of the Office of the Attorney General;

27

therefore, Community Affairs could not provide them to the defense at that time.  Ms. Bartos also explained to the state trial court that the "documents are critical to the defense . . . not only in the preparation of the defense, but their availability is essential in the cross-examination of the States' witnesses." App. 252.  Additionally, Ms. Bartos explained to the court that, because the witness list consisted of 560 names, "it would have been virtually impossible for [her]  to contact, to interview, to evaluate in assessing those witnesses appearing in that very, very short period of time."[14]  App. 116-17.

Nevertheless, the court denied Ms. Bartos's request for a continuance. Consequently, believing that he was then better prepared for trial than Ms. Bartos, Pazden "chose to" represent himself and proceed to trial with Ms. Bartos acting as stand-by counsel.  Pursuant to the Supreme Court's decision in *Von Moltke*, the trial court conducted an inquiry to "decide whether [Pazden] was bowing to the inevitable or voluntarily and affirmatively waiving his right to counsel."  *See Von Moltke*, 332 U.S. at 722; *Salemo*, 61 F.3d at 220. That colloquy is set forth at length above. *See* pp 6-8, *supra.*  Upon concluding this colloquy, the court found, "with regard to [Pazden's] choice to represent himself, I'm satisfied that this is something that is

---

[14]We recognize that one of the reasons Ms. Bartos was left with so little time to interview the potential witnesses was Pazden's failure to supply her with the witness list until January, 1996.  However, as already noted, Ms. Bartos's request for a continuance was based on factors that were primarily beyond her, or Pazden's, control.

his voluntary choice."

## C. Analysis.

Clearly, under *Faretta*, Pazden had the right to waive counsel and proceed to trial *pro se*. However, Pazden could only have done so if he was "voluntarily exercising his informed free will." *See Faretta*, 422 U.S. at 835. "[T]here can be no doubt that [those who wrote the Bill of Rights] understood the inestimable worth of free choice." *Id*. at 833. Here, Pazden was not exercising his free will, but was instead compelled to proceed *pro se* only because his attorney had not been given enough time to familiarize herself with the relevant background of his case. The record here support's Pazden's contention that his decision to proceed *pro se* was not an exercise of free will, rather it was the result of him "bowing to the inevitable." This record is replete with statements and submissions by Pazden's attorney explaining that she was unprepared to proceed to trial, as well as statements by Pazden explaining the dilemma he was placed in by the late discovery and the inflexible trial date.[15]

---

[15] In her dissenting opinion, Judge Rendell writes, "I wonder whether a defendant who has three years to prepare for trial, can legitimately complain that his Sixth Amendment rights were violated based on his decision to represent himself because counsel was not prepared." Dissent at 2. Her concern is well taken. However, this record is replete with statements, not only from Pazden, but also from Ms. Bartos (and her colleague Mr. Smith), that enumerate the reasons for asking for a three month trial delay. As noted above, these reasons included the

Pazden explained that he was compelled to proceed *pro se* by the fact that counsel "was prevented from giving [him] effective assistance by late discovery . . . and by the fact that this Court hasn't given her the opportunity to review the discovery, to do a proper investigation." App. 108. Nevertheless, he emphasized that "Miss Bartos, if given an adjournment and given the opportunity would know the facts as well as [he did] and if she knew the facts as well as [he did] then [he would be] prepared to go to trial." App. 109. In addition, he believed that disagreements with some of Ms. Bartos's decisions "would evaporate if [Ms. Bartos] was given a chance to study the facts."

prosecution's refusal to furnish timely discovery, the prosecution's furnishing of discovery in a piecemeal fashion, and defense counsel's inability to interview all of the witnesses on the witness list before the trial was to begin. *See* pp 4-6, 19-21, *supra*. Accordingly, we cannot agree with the dissent's conclusion that "[i]t was the impossibility of interviewing [all of the witnesses on the witness list that Pazden provided to Ms. Bartos] that was at the heart of [Ms. Bartos's] purported inability to proceed in mid-February." Dissent at 1. Ms. Bartos's inability to interview all of those witnesses was merely one of a number of factors that lead to her request.

Moreover, the trial court could have conducted a more thorough inquiry and determined if there was "good cause" for the requested continuance. Thus, notwithstanding the dissent's understandable concerns, absent a more probing inquiry than was conducted here, this record simply does not support a conclusion that Pazden's waiver of his Sixth Amendment right to counsel was voluntary.

However, as Pazden expressed, the court's denial of Ms. Bartos's request for a three-month adjournment forced him to choose between the "lesser of two evils," effectively leaving him with "no choice in th[e] matter" at all.[16] App. 105, 108, 109, 111. This hardly constitutes a voluntary choice to waive one's Sixth Amendment right to counsel under *Faretta*, and it is inconsistent with teachings of *Johnson*.

As we noted above, *supra* at n.9, in deciding whether Pazden could constitutionally proceed to trial *pro se*, the state

---

[16]Appellees argue that Pazden's "claim of selecting the lesser of the two evils by appearing *pro se* is plainly a ruse – an attempt to build a record by an arrogant, highly intelligent, but morally bankrupt, criminal who throughout this trial tried to manipulate and deceive the trial Court." Appellees' brief at 37. That "argument" is, of course, neither relevant to our inquiry, nor does it qualify as legal argument. Rather, it is a gratuitous *ad hominem* attack that detracts from the persuasiveness of the government's argument as well as the professionalism of its presentation. We should not have to remind officers of the court that such personal comments have little place in an appellate brief.

Moreover, even if the thrust of what the government is apparently trying to convey was appropriate, it would still be irrelevant. We remind the appellees that we have previously noted that "[e]ven well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights." *Welty*, 674 F.2d at 189; *see also Buhl*, 233 F.3d at 796.

trial court relied upon *State v. Gallagher*, 644 A.2d 103 (N.J. Super. 1994).[17] However, *Gallagher* does not furnish the controlling rule of law. There, the defendant was charged with various racketeering offenses along with fourteen others in a multi-count indictment. *Id*. at 104-05. However, charges against all of the other defendants were dismissed and only Gallagher proceeded to trial. Prior to trial, the trial court granted his request to proceed *pro* se. *Id*. at 106. In making that request, Gallagher informed the court that he had successfully represented himself in two other federal criminal trials, he had completed two years of law school, and that he was currently representing himself in an ongoing federal racketeering trial. *Id*. After warning Gallagher of the dangers inherent in proceeding without counsel, the court appointed standby counsel and allowed him to represent himself. However, following an exchange of letters and a dispute over some motions that Gallagher wanted to file, the trial court rescinded that order and required Gallagher to proceed to trial represented by defense counsel. *Id*. at 107. The court concluded that Gallagher "did not 'appreciate the ins and outs of . . . motion practice.'" *Id*. (ellipsis in original).

On appeal, the Appellate Division of the Superior Court

---

[17] The trial court's ruling was affirmed in an unpublished opinion that neither side included in any appendix filed with us for this appeal. Moreover, during argument, counsel represented that the decision of the appellate court does not add to the trial court's analysis. Accordingly, we focus on the state trial court's reasons for denying Pazden's Sixth Amendment claim.

of New Jersey reversed, concluding that the trial court's revocation of the order allowing Gallagher to proceed *pro se* was contrary to *Faretta*. The appellate court explained that "*Faretta* holds that a state may not constitutionally impose a lawyer upon an unwilling defendant." *Id*. at 108. The court did not discuss whether Gallagher's initial waiver had been voluntary; that was not the issue.[18] Rather, the court explained that it was deciding "defendant's contention that he was denied his Sixth Amendment right to represent himself." *Id*. at 106. There was never any dispute about whether his waiver of counsel had been voluntary or the result of an unconstitutional dilemma such as the one presented here because his sole Sixth Amendment argument was that he had not been allowed to waive counsel.[19]

Here, the state court believed that *Faretta* controlled Pazden's appeal. However, *Faretta* involved a defendant who was denied his right to proceed *pro* se and was forced instead to proceed to trial *with* defense counsel. Following conviction, the Supreme Court held that the Sixth Amendment right to counsel includes the right to represent oneself in a criminal trial.

---

[18] It is, of course, the issue here.

[19] The Appellate Division's reliance on *Faretta* was therefore appropriate because in *Faretta*, as in *Gallagher*, the trial court rescinded a prior order granting the right to proceed *pro se* and required the defendant to proceed to trial represented by counsel based upon the concerns that the defendant could not adequately represent himself. *See Faretta*, 422 U.S. at 808-09.

*Faretta*, 422 U.S. at 836. *Faretta* does not control where, as here, a defendant's decision to proceed *pro se* is "involuntary" in the constitutional sense. That requires an inquiry into the voluntariness of Pazden's purported waiver of counsel.

Moreover, the trial court's conclusion that Pazden waived his right to defense counsel was "contrary to" the Supreme Court's decision in *Johnson*, 304 U.S. 458. *Johnson* instructs that the trial judge has "the serious and weighty responsibility" of determining if a defendant's right to counsel has been waived, and prohibits forcing a defendant to trial absent a valid waiver of this Sixth Amendment right. *Id*. at 465. *Johnson* requires that we "indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights." *Id*. at 464 (internal quotation marks omitted). As the Court explained there:

> Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not

34

represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty.

304 U.S. at 467-468. In *Salemo*, we explained that "[a] defendant will not normally be deemed to have waived the right to counsel by reluctantly agreeing to proceed *pro se* under circumstances where it may appear that there is no choice." 61 F.3d at 221. We explained:

[t]he Court[] has scrupulously required that a defendant's waiver of counsel be both voluntary and a "knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883-84, 68 L.Ed.2d 378 (1981). Whether a defendant has voluntarily, knowingly and intelligently relinquished the right to counsel "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Id.*

35

*Salemo*, 61 F.3d at 218. In citing *Edwards*, we noted that the Court was there quoting *Johnson*, 304 U.S. at 464.

Similarly, in *Sanchez v. Mondragon*, 858 F.2d 1462, 1465 (10th Cir. 1988), *reversed on other grounds*, the court explained, "[a] choice between incompetent or unprepared counsel and appearing *pro se* is a dilemma of constitutional magnitude. The choice to proceed *pro se* cannot be voluntary in the constitutional sense when such a dilemma exists." (Internal citations and quotations omitted).[20]

As we explained above, the trial court did inquire into whether Pazden knowingly, intelligently and voluntarily relinquished his Sixth Amendment rights. However, in conducting the inquiry, the trial judge either ignored Pazden's

---

[20] *See also Wilks*, 627 F.2d at 36 ("A clear choice between two alternative courses of action does not always permit a petitioner to make a voluntary decision. If a choice presented to a petitioner is constitutionally offensive, then the choice cannot be voluntary . . . The permissibility of the choice presented to the petitioner . . . depends on whether the alternative to self-representation offered operated to deprive him of a fail trial."); *Maynard*, 545 F.2d at 278 ("[a] criminal defendant may [not] be asked . . . to choose between waiver and another course of action [if] the choice presented to him is . . . constitutionally offensive."); *United States ex rel. Martinez*, 526 F.2d at 756 (appellant's choice, "if choice it can be called, was based entirely on his bowing to the inevitable.").

answers or failed to realize their constitutional significance.[21] As a result, the trial court's rejection of Pazden's Sixth Amendment claim was contrary to the pronouncements of *Johnson*. Pazden's waiver of counsel was not voluntary in the constitutional sense. Moreover, to the extent the state court relied upon *Faretta*, its decision is an unreasonable application of the rule the Court announced there because *Faretta* does not apply here. "[I]t is [therefore] the duty of [this] court to grant the [habeas corpus] writ." *Johnson*, 304 U.S. at 469.

## IV. Conclusion.

For the reasons set forth above, we will reverse the District Court's denial of federal habeas relief and remand with instructions to grant the writ if the defendant is not retried in 180 days.

---

[21] Despite the dissent's concerns, the trial judge did not conclude that Pazden was "agreeing" to proceed *pro se* as a strategy or tactic and not because of a genuine belief that defense counsel was not sufficiently prepared to represent him. Moreover, the prosecution's approach to discovery is certainly consistent with defense counsel's concerns about being able to adequately represent Pazden. We therefore conclude that this record is simply not sufficient to establish that Pazden's decision to waive counsel and proceed *pro se* was voluntary.

**Pazden v. Maurer, No. 03-4236 - dissenting**

RENDELL, Circuit Judge.

The instant matter unfortunately falls into the category of cases which exemplify the adage that "bad facts make bad law," *Haig v. Agee*, 453 U.S. 280, 319 (1981), and therefore, I respectfully dissent. Michael Pazden has advanced two strong, but diametrically opposed, arguments. He first urges that he was forced to proceed to trial, and to defend himself *pro se* because his lawyer did not have sufficient time to prepare, three years after he was indicted. Second, he contends that his right to a speedy trial was violated based on the fact he was not afforded a trial for three years. This should, if nothing else, give us pause. I find Pazden's sense of compulsion – which he repeatedly characterized as a choice "between the lesser of two evils" – to be misplaced. (Michael Pazden, Trans. Feb. 15, 1996 at 30) The only compulsion sincerely felt here was by the trial judge, who, as those of us who have been trial judges may recognize, are faced with defendants who set traps for the unwary. In my view, which I believe is supported by the record, Michael Pazden faced no real evils; rather, he was intent on making his case for just what the majority has ordered.

While it is true that some discovery was not turned over until September 1994, and still other items in January of 1995, nonetheless Ms. Bartos noted that the witness list – of 560 names – was not provided by her own client, Michael Pazden, until January 1995. It was the impossibility of interviewing them all that was at the heart of her purported inability to proceed in mid-February. In addition, many of the records in the

38

case were located in Pazden's house.[22] The numerous counts in the indictment were based on the number of victims, not the complexity of Pazden's scheme. The prosecutor in this case, who was assigned the matter in December 1994, three months *after* Ms. Bartos began to represent Pazden, conducted more than 50 interviews in a short span of time and was prepared to proceed. (Attorney Snowden, Trans. Feb. 15, 1996 at 39.)

Although I agree with the majority that ad hominem attacks should not be employed to undermine constitutional rights, nonetheless, I wonder whether a defendant who has three years to prepare for trial and does not give counsel a witness list until one month before trial, can legitimately complain that his Sixth Amendment rights were violated based on his decision to represent himself because counsel was not prepared. Viewed from a slightly different vantage point, perhaps we have before us nothing more than a judicial decision not to grant a continuance in the exercise of a court's discretion, and in the face of a companion speedy trial argument. I note that the majority focuses on Pazden's choice, not the colloquy or his understanding of what he was embarking upon, so I question the applicability of either *Johnson* or *Faretta*. Instead, I would

---

[22]In fact, during the trial, at the direction of the trial judge, a lieutenant was dispatched to Pazden's residence where records including canceled checks, bank statements, registers and stubs were located notwithstanding Pazden's insistence that he was not in possession of such records. As noted by the prosecutor, "95 percent of the evidence in this case comes from Mr. Pazden." (Attorney Snowden, Trans. Feb. 15, 1996 at 39.)

suggest that the constitutional inquiry actually should be somewhat broader and explore "voluntariness," by considering whether Pazden did voluntarily make his decision by virtue of his own dilatory conduct.  And, in any event, I am unable to locate any Supreme Court opinion either on point, or that has announced a principle that applies here, such that I do not believe Judge Marmo's proceeding to trial, with Pazden representing himself, was "contrary to" or an "unreasonable application" of established Supreme Court precedent.