**Marcus DeSHIELDS**

v.

**Robert SHANNON; PA State Attorney General, Appellants.**

No. 08–1995.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 9, 2009.

Filed: July 10, 2009.

Ronald A. Krauss, Esq., Office of Federal Public Defender, Harrisburg, PA, for Marcus DeShields.

Clarence N. Patterson, Jr., Esq., York, PA, for Appellants.

Before: SLOVITER, AMBRO and JORDAN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Marcus DeShields was tried in the Pennsylvania Court of Common Pleas and convicted of several crimes, including aggravated assault. He was sentenced to 70 to 180 months in prison and, after exhausting his state remedies, filed a petition for *habeas corpus* in the United States District Court for the Middle District of Pennsylvania. The District Court determined that the state courts had erroneously denied DeShields's ineffective assistance of counsel claim and it accordingly granted his habeas petition. The Commonwealth of Pennsylvania has appealed. Because we agree with the District Court's conclusion, we will affirm.

## I. Background

On August 12, 2001, Marcus DeShields was present when an altercation and shooting occurred outside the American Legion Post, in York, Pennsylvania. Police arrested DeShields at the scene and, although he was not carrying a gun and no gun was recovered at the scene, he was ultimately charged with shooting Delmas Cunningham and firing at a police officer. DeShields was tried before a jury in January 2003.

One of the contested issues at trial was whether DeShields had possessed and fired a gun during the altercation. Antoinette Davis testified at trial that she saw DeShields shoot Cunningham. Yet, on the night of the incident, a police officer named Dehart interviewed Davis and noted in his report that Davis said she did not see the shooter. Despite having Dehart's report, DeShields's trial counsel did not confront Davis with her prior inconsistent statement.

After arresting DeShields, police tested his hands for gun shot residue and sent his

clothes to a laboratory for similar testing. The results of both tests were inconclusive.[1] At trial, John Evans, a police forensic scientist, testified that the tests run on DeShields's hands were inconclusive and explained that an individual can remove gun shot residue from his hands by wiping them on his clothes. Evans also testified that he did not have the equipment to test DeShields's clothes and did not know whether they had been sent to a laboratory for testing. DeShields's counsel had not subpoenaed anyone from the laboratory to testify that tests had been run on DeShields's clothes and that the results were inconclusive, and that evidence was never presented to the jury.

DeShields's counsel also chose not to call two witnesses who would have testified that they were with or near DeShields at the time of the altercation and that he neither possessed nor fired a gun. Darryle Buffington was prepared to testify that he and DeShields left the American Legion Post together, saw the altercation, and then heard shots. Upon hearing the shots, they dropped to the ground and then ran from the scene. As they were running, the police stopped and arrested DeShields. Tonisha Penn was prepared to testify that she was at the American Legion Post during the altercation and saw DeShields running without a gun as the shots were fired. Although both Buffington and Penn were present at trial and ready to testify, DeShields's trial counsel did not call either witness to the stand.

The jury found DeShields guilty of three counts of aggravated assault, one count of simple assault, and one count of recklessly endangering another person, and the Court sentenced him to 70 to 180 months in prison. DeShields filed a timely appeal, and his conviction was affirmed by the Superior Court of Pennsylvania. He then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court and his petition was denied.

Following his direct appeals, DeShields filed a *pro se* petition for relief under Pennsylvania's Post–Conviction Relief Act ("PCRA") in the York County Court of Common Pleas. In his petition, he alleged that his trial counsel was ineffective for failing to cross-examine Davis on her prior inconsistent statement, failing to call an expert witness to testify that the gun shot residue tests run on his clothes were inconclusive, and failing to call Buffington and Penn to testify that he did not possess or fire a gun. The Court of Common Pleas held a hearing on DeShields's PCRA claim and denied it. He appealed to the Superior Court, which affirmed the denial. He then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, and the Court denied his petition.

After exhausting his state court remedies, DeShields filed a *pro se* petition for habeas corpus, under 28 U.S.C. § 2254, in the United States District Court for the Middle District of Pennsylvania. The District Court requested transcripts from the trial and the PCRA hearing held in the Court of Common Pleas and appointed the Federal Public Defender to represent DeShields. On March 20, 2008, the District Court issued an order granting DeShields's habeas petition and ordering the Commonwealth to release DeShields or retry him within ninety days. In its order, the District Court explained its holding:

---

1. A government witness explained that the gun shot residue tests run on DeShields's hands and clothes check for the presence of antimony and barium. If there are sufficient amounts of antimony and barium and the ratio of antimony to barium is within an acceptable range, the results are conclusive in showing the presence of gun shot residue. If any of the three criteria is not met, the results are considered inconclusive.

In light of the state court record, we conclude that defense counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed DeShields by the Sixth Amendment to the United States Constitution and that defense counsel's errors were so serious as to deprive DeShields of a fair trial, a trial whose result is reliable.

(Supp.App. at 16–17.)

The Commonwealth timely appealed and argues that the District Court erred by granting DeShields's habeas petition.

## II. Discussion[2]

We review *de novo* the District Court's decision to grant DeShields's petition for a writ of habeas corpus, since the Court did not conduct an evidentiary hearing. *Pazden v. Maurer*, 424 F.3d 303, 310 (3d Cir.2005). Like the District Court, our analysis of DeShields's habeas petition is governed by the standards set forth in the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1).

"A state court decision is an unreasonable application under § 2254(d)(1) if the court 'identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir.2005) (quoting *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.2002); *see also Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).) Because the unreasonable application standard is objective, "a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs*, 395 F.3d at 100 (citing *Wiggins v. Smith*, 539 U.S. 510, 520–21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). Rather, a federal court may only grant relief if "'the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.'" *Bond v. Beard*, 539 F.3d 256, 263 (3d Cir.2008) (quoting *Hackett v. Price*, 381 F.3d 281, 287 (3d Cir.2004)).

"Sixth Amendment claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which qualifies as clearly established federal law, as determined by the Supreme Court of the United States." *Taylor v. Horn*, 504 F.3d 416, 430 (3d Cir.2007) (in-

**2.** The District Court had jurisdiction over DeShields's habeas petition under 28 U.S.C. § 2254. We have jurisdiction to review the District Court's final order under 28 U.S.C. §§ 1291, 2253.

ternal quotation marks and citation omitted). Under *Strickland*, a petitioner must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. 2052. An attorney's performance is judged on whether he or she provided reasonably effective assistance, *id.*, and falls below that threshold if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. A defendant is prejudiced by counsel's deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

In this case, DeShields asserts three grounds for concluding that his trial counsel's performance was deficient. First, he contends that, after Antoinette Davis testified that she saw him shoot Cunningham, his counsel inexplicably failed to confront Davis with her prior statement to Officer Dehart that she did not see the shooter. Davis's trial testimony and her statement to Officer Dehart directly contradict each other and concern the central issue in the case: whether DeShields possessed and fired a gun.

The Court of Common Pleas and Superior Court concluded that because DeShields's counsel cross-examined Davis,

DeShields was not prejudiced. That sidesteps the issue. DeShields does not contend that his counsel was deficient because he failed to cross-examine Davis; he claims that his counsel was deficient because he failed to confront Davis with the clear contradiction between her trial testimony and the statement she made to Officer Dehart on the night of the incident. Neither the Court of Common Pleas nor the Superior Court addressed that issue.[3]

Second, DeShields alleges that his counsel was deficient for failing to introduce evidence that his clothing was tested for gun shot residue and the results were inconclusive. The state courts concluded that DeShields was not prejudiced because a government witness, Evans, had already testified that such tests were run on DeShields's hands and clothing and were inconclusive. That, however, is not in accord with the record. At trial, Evans testified that DeShields's hands were tested for gun shot residue and the results were inconclusive. He then indicated that, despite the test results, DeShields could have fired a gun and then wiped his hands on his clothes. Evans did not testify that DeShields's clothes had also been tested and that the results were likewise inconclusive. In fact, he specifically disclaimed knowing whether the clothes had been tested. The inconclusive testing on the clothes was never put before the jury because DeShields's counsel did not take any steps to do so, such as calling a witness from the

---

**3.** The Commonwealth argues that Davis's statement does not constitute an inconsistent statement under Pennsylvania law. Having never made that argument in the District Court, the Commonwealth waived it entirely. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("[A]bsent exceptional circumstances, issues not raised before the district court are waived on appeal."). Even if that were not the case, however, the argument is unfound-

ed. While the Commonwealth says Davis's statement does not qualify as an inconsistent statement under Pennsylvania Rule of Evidence 803.1(1), that rule addresses only the question of whether a prior statement can be admitted as an exception to the hearsay rule and substantive evidence. It does not speak at all to the use of the statement as impeachment evidence, an issue governed by Rules 613 and 607 of the Pennsylvania Rules of Evidence.

laboratory to testify about the results or otherwise entering the lab report into evidence.

Third, DeShields claims that his counsel was deficient for failing to call Buffington and Penn, who would have testified that they were with or near DeShields during the altercation and that he neither possessed nor fired a gun. The state courts concluded that DeShields's counsel had a reasonable basis for not calling Buffington and Penn because there were inconsistencies between what they would have said, which would have created credibility problems for the defense. In particular, Buffington would have testified that he and DeShields fell to the ground after hearing the shots and Penn would have testified that she saw DeShields and Buffington running as the shots were fired. As the District Court pointed out, however, the state courts unnecessarily treated Buffington and Penn as a package deal. Even accepting that it was a reasonable strategic choice to say that the inconsistency between their proposed testimonies was serious enough to avoid calling them both, that does not answer the question of why DeShields's counsel chose to call neither. The testimony of either witness would have bolstered the defense on the critical question of whether DeShields possessed and fired a gun. The record does not disclose any other reason for deciding not to call either witness and we are left to wonder what sound reason there could have been. *Cf. Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

We recognize the inherent difficulties in serving as defense counsel. Attorneys in that role are typically called upon to organize and assimilate complicated and voluminous information as they prepare for trial. They must make difficult and often hurried decisions in the heat of trial. They are required to think creatively, act resourcefully, and advocate their client's causes with zeal and ethical sensitivity, all while necessarily serving as a sounding board for anxious defendants and the defendants' families. It is no job for the faint of heart, and we are reluctant to find fault. Taken individually, DeShields's counsel's failures would perhaps be insufficient for us to conclude that his performance was constitutionally deficient. Yet, when the record is viewed as a whole and the cumulative effect of counsel's failures is considered, we feel compelled to say that DeShields's counsel was deficient in his performance.

We also conclude, as the District Court did, that DeShields was prejudiced by his counsel's deficiency. Each of the failures discussed here concerns the central issue in the case—whether DeShields possessed and fired a gun—and curing them may well have led to a different outcome. Had Davis been confronted with her prior inconsistent statement, had evidence been introduced that tests for gun shot residue on DeShields's clothes were inconclusive, and had Buffington or Penn taken the stand to testify that DeShields did not possess or fire a gun, there is a reasonable probability that at least one juror would have harbored a reasonable doubt as to DeShields's guilt. Consequently, DeShields was deprived of effective assistance of counsel.

### III. Conclusion

Because the state courts unreasonably applied the Supreme Court's holding in *Strickland v. Washington* in denying DeShields's Sixth Amendment ineffective assistance of counsel claim, the District Court correctly granted the petition for

habeas corpus. Accordingly, we will affirm.