*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0449p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AHMAD JAMES,

*Petitioner-Appellee,*

*v.*

No. 05-4003

ANTHONY BRIGANO, Warden, Warren Correctional
Institution,

*Respondent-Appellant.*

>

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 00-00491—Thomas M. Rose, District Judge.

Submitted: May 30, 2006

Decided and Filed: November 30, 2006

Before: KEITH and BATCHELDER, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Diane Mallory, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS
LITIGATION SECTION, Columbus, Ohio, for Appellant. Derek A. Farmer, DEREK A. FARMER
& ASSOCIATES CO., Columbus, Ohio, for Appellee.

ALDRICH, D. J., delivered the opinion of the court, in which KEITH, J., joined.
BATCHELDER, J. (p. 8), delivered a separate opinion concurring in the result.

---

## OPINION

---

ANN ALDRICH, District Judge. Respondent-appellant Anthony Brigano, Warden of the
Warren Correctional Institution (the "Warden"), appeals the district court's grant of habeas corpus
relief pursuant to 28 U.S.C. § 2254 to petitioner-appellee Ahmad James ("James") on his claims that
(1) the state trial court failed to inquire as to the reasons for James's dissatisfaction with appointed
counsel prior to trial, and (2) James's waiver of appointed counsel was not made knowingly and
intelligently. Because the district court properly determined that neither of James's claims were

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by
designation.

procedurally defaulted, that it could order an evidentiary hearing, and that James's waiver of counsel was not made knowingly and intelligently, we affirm the district court's grant of habeas relief.

**I.**

James was indicted in September 1996 on a number of felony counts, including possession of crack cocaine while carrying a concealed weapon, possession of powder cocaine, carrying a concealed weapon, and having a weapon under disability. Following a trial in June 1997, a jury convicted James of the charge of having a weapon under disability, but hung on the remaining three charges. After the June 1997 trial, the counsel James had retained withdrew, citing James's indigence and inability to pay for their services. James was sentenced to 12 months incarceration for having a weapon under disability.

A public defender was then appointed to represent James after his previous attorneys withdrew, but the public defender did virtually no work and ended up withdrawing in May 1998 prior to James's re-trial on the three remaining charges. After the completion of the 12 month sentence, James was retried on the other three felony charges. The attorney who was appointed to represent James at that trial, his third attorney, was Albert Stewart ("Stewart"). On the day trial was scheduled to begin, June 22, 1998, Stewart met with James and informed him that he was not prepared to go to trial that day, that he had not received discovery from the prosecutor, and that he intended to ask for a continuance.

Stewart then asked the state trial court judge for a continuance. The state trial judge denied Stewart's request because Stewart was already in possession of the transcript from the June 1997 trial, which was, in the judge's opinion, superior to any discovery that could be had from the prosecutor. Following that, twice during the voir dire of prospective jurors, James declared that he wanted to fire Stewart. The judge instructed James not to engage in any further outbursts, lest James be found in contempt, tried in absentia, or gagged. At this point, Stewart again moved to withdraw as counsel, on the grounds that he could not properly represent James and get him a fair trial. While discussing the matter, the prosecutor suggested that James was "play[ing] the same trick" his half-brother had three weeks earlier, by engaging in spontaneous outbursts during jury selection, which led to a mistrial. The trial judge denied Stewart's request to withdraw, asserting that Stewart was ready for trial.

The trial judge then asked James if he wished to represent himself, if he did not wish to be represented by Stewart. The trial judge did not inquire into James's reasons for wanting to fire Stewart, nor did the trial judge explain the risks and dangers of self-representation. The court then permitted James to represent himself, without making a specific finding that James's waiver of counsel was knowing or intelligent. The jury convicted James on the three remaining counts, and he was sentenced to a total of thirteen years' incarceration.

James filed a direct appeal in July 1998 listing five assignments of error, but failing to list the two grounds on which the district court granted habeas relief: (1) the Sixth Amendment required the trial court to inquire into complaints made by an indigent criminal defendant prior to trial regarding appointed counsel's effectivness; and (2) that his waiver of counsel was not knowingly, intelligently, or voluntarily made. The Ohio Court of Appeals affirmed James's convictions in February 1999. James petitioned for leave to appeal to the Ohio Supreme Court, raising the two grounds on which habeas relief was granted. The Ohio Supreme Court denied leave to appeal in June 1999.

Then, in May 1999, James filed in the Ohio Court of Appeals an application to reopen his appeal, listing the two grounds on which habeas relief was eventually granted. The Ohio Court of Appeals denied James's request in August 1999, finding that "waiver of counsel" was not an issue

in James's trial, due to his dilatory tactics, and otherwise finding James's arguments without merit. James filed for leave to appeal that decision to the Ohio Supreme Court in September 1999, but the Ohio Supreme Court denied leave in November 1999.

James then filed the instant habeas action in the United States District Court for the Southern District of Ohio in September 2000, pressing four claims for relief. Magistrate Judge Michael Merz filed a Report & Recommendation ("R&R"), recommending that the petition be dismissed. Judge Walter Rice adopted that R&R in part and rejected it in part, remanding the matter for an evidentiary hearing on the two claims for habeas relief which would eventually be granted. In so doing, Judge Rice held that the success of James's second claim for relief, the failure of the state trial judge to inquire into the reasons for James's dissatisfaction with appointed counsel depended on the success of James's third claim for relief -- that James's waiver of counsel was not knowingly and intelligently made. The case was then transferred to Judge Thomas Rose and Magistrate Judge Sharon Ovington.

Following the evidentiary hearing, Magistrate Judge Ovington filed an R&R recommending that James's petition for habeas relief be granted on his second and third claims for relief. Judge Rose adopted that R&R in its entirety in June 2005, overruling the Warden's objections, prompting the Warden's appeal to this court.

## II.

Before addressing the merits of James's respective claims for habeas relief, we must first address two procedural matters. First, the Warden argues that James's claims for relief are barred by procedural default, and that such default may not be excused in this case. Second, the Warden argues that James failed to develop the factual basis for his habeas claims, such that the district court erroneously ordered the evidentiary hearing that led to the grant of habeas relief.

### A.

On the question of procedural default, the court applies the familiar four-part *Maupin* test. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under *Maupin*, the court must determine: (1) if there is a state procedural rule that applies and petitioner failed to comply with that rule; (2) if the state court actually enforced the state procedural sanction; (3) if the state procedure ground is an "independent and adequate" ground to refuse review; and (4) if there is no cause and prejudice to excuse the default. *Id.* "[A] state rule is independent if the state court *actually relies on it* to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (emphasis added) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

In this case, the question is whether, in denying James's motion to reopen his direct appeal, the Ohio Court of Appeals "actually relie[d]" on a state procedural rule to "preclude a merits review." The procedural rule in question is OHIO APP. R. 26(B), which governs applications by a criminal defendant to reopen an appeal "based on a claim of ineffective assistance of appellate counsel." OHIO APP. R. 26(B)(1). That procedure, created by the Ohio Supreme Court in *State v. Murnahan*, ensured that defendants could raise constitutional claims, but prevented state trial courts from "second-guess[ing] superior appellate courts." 584 N.E.2d 1204, 1208, 63 Ohio St. 3d 60, 65 (1992). As codified in OHIO APP. R. 26(B), a motion to reopen "shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." OHIO APP. R. 26(B)(5). As the Ohio Supreme Court put it in *Murnahan*, the defendant must "put forth a colorable claim of ineffective assistance of appellate counsel." 584 N.E.2d at 1209, 63 Ohio St. 3d at 66. If the court of appeals denies the motion to reopen, it must "state in the entry the reasons for denial." OHIO APP. R. 26(B)(6).

In this case, Magistrate Judge Ovington's R&R found that the Ohio Court of Appeals did not, in fact, enforce the state procedural sanction. James failed to present the two claims for habeas relief at issue in his direct appeal, but he did submit the claims in his application to reopen his appeal. While the Ohio Court of Appeals rejected that application, it did review both of James's claims on the merits instead of rejecting them on procedural grounds. The Warden argues, however, that claims reviewed in an application to reopen an appeal are *never* actually presented before a state court for the purposes of avoiding procedural default, citing *Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

In *Lott*, the Sixth Circuit held that a habeas petitioner's application to the Ohio Court of Appeals to reopen an appeal, relying upon an ineffective assistance of counsel claim, which was itself based on an involuntary jury waiver claim did not constitute presentation of that involuntary jury waiver claim to state court to avoid procedural default. 261 F.3d at 607. However, in *Lott*, the Sixth Circuit only held that the fact "that a court, in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error for purposes of determining the existence of *Strickland* prejudice is not dispositive of the question whether a procedurally defaulted claim has been resurrected." *Id.* at 612. In other words, examination of the prejudice prong is not *always* sufficient to overcome procedural default. However, the Sixth Circuit did not hold, despite the Warden's assertions, that examination of the prejudice prong is *never* sufficient to overcome procedural default. The *Lott* Court simply requires courts to examine precisely what the court of appeals did, in accordance with the *Maupin* test. And in *Lott*, the court found that the claims were procedurally defaulted because the "last reasoned opinion" on that defendant's specific claims found those claims to be procedurally barred by res judicata. *Id.* James's claims, however, were never found to be so barred.

In *Patterson v. Haskins*, the Sixth Circuit examined precisely what the Ohio Court of Appeals did in resolving the question of procedural default. 316 F.3d 596, 605 (6th Cir. 2003). The Ohio Court of Appeals, in denying the motion to reopen, stated that with respect to allegedly erroneous jury instructions, "the court did not commit error, plain or otherwise in giving . . . the jury instructions." *State v. Patterson*, Case No. CT97-0035, slip op. at 4 (Ohio Ct. App. Nov. 24, 1998). The Sixth Circuit thus held that because the Ohio Court of Appeals, in denying a motion to reopen a criminal appeal under OHIO APP. R. 26(B), expressly examined the underlying claim in finding no prejudice, the Ohio Court of Appeals "indicated that the decision rested on an evaluation of the merits of his claim," and that claim was not procedurally defaulted for habeas purposes. *Patterson*, 316 F.3d at 605.

In this case, as in *Patterson*, the Ohio Court of Appeals expressly examined the underlying claims raised by James in denying his motion to reopen. On James's claim that the state trial court failed to inquire into the reasons for his dissatisfaction with appointed counsel prior to removing said counsel, the Ohio Court of Appeals stated that, "[b]ased on the . . . record, we find that James failed to meet the burden of announcing grounds that would entitle him to discharge his counsel," and "because James failed to meet his burden . . . the trial court had no duty of inquiry." *State v. James*, App. Case No. 98-CA-54, slip op. at 8-9 (Ohio Ct. App. Aug. 26, 1999). On James's claim that his waiver of appointed counsel before the state trial court was not made knowingly and intelligently, the Ohio Court of Appeals stated that "this situation does not involve waiver of counsel," and instead analyzed the claim as though James had been engaging in dilatory tactics. *Id.* at 12.

The Ohio Court of Appeals' lengthy opinion denying James's motion to reopen does not frame its rejection of James's underlying claims as a failure to find prejudice or on procedural grounds, but instead rejects those claims on their merits. Therefore, because the Ohio Court of Appeals did not actually rely on the procedural bar in rejecting either of James's claims, those claims are not procedurally defaulted for habeas purposes.

**B.**

The Warden also argues that the district court erred in ordering an evidentiary hearing on James's claims, as 28 U.S.C. § 2254(e)(2) states that a court "shall not hold an evidentiary hearing" if James "has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). However, Section 2254(e)(2) bars evidentiary hearings only if it was the *petitioner's* fault that the factual record was not developed in state court. *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 420, 437-38 (2000)) (holding that "failed to develop" means that the petitioner was at fault or failed to exercise diligence in developing the record). From the record below, it is obvious that any failure to develop the record below was the fault of the state trial court, not James. James, proceeding effectively *pro se* just prior to proceeding actually *pro se*, made his complaints known to the state trial judge in as clear terms as he could have been expected to manage. The state trial judge, on the other hand, decided that James was attempting to delay trial and summarily forced James to choose between self-representation and counsel that, by Stewart's own admission, was unprepared. More to the point, it was the trial court's duty to determine that James's waiver was knowing and intelligent before he accepted it. Therefore, it was not error to order the evidentiary hearing, because it was not James's fault that the factual record was not fully developed in state court.

**III.**

As for the merits of James's habeas claims, because the claims James presented to the Ohio Court of Appeals in his application to reopen his appeal were evaluated on the merits such that neither of his claims were procedurally defaulted, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq*., govern this case.

AEDPA dictates that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2004). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court[1] explained the "contrary to" language of section (1) as follows:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

---

[1] In a split decision, Justice O'Connor's opinion represents the plurality for these sections.

*Id*. at 405-406, and the "unreasonable application" language in this way:

> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 410-11. In other words, the Ohio Court of Appeals must have applied the law in an "objectively unreasonable" manner in order for this court to grant relief under the AEDPA standards. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

In reviewing a grant of habeas relief, the standard of review is *de novo*, but any findings of fact are reviewed for clear error. *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005); *Combs v. Coyle*, 205 F.3d 269, 277 (6th Cir. 2000). A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). A federal appeals court gives complete deference to the district court's and state court's findings of fact supported by the evidence. *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994).

### A.

The basis of the district court's grant of relief on James's first claim, that his Sixth Amendment rights were violated because the state trial court failed to inquire into the reasons for his dissatisfaction with appointed counsel prior to removing said counsel, is a Sixth Circuit case, *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (holding that the trial court has a duty to determine the reasons for an indigent defendant's dissatisfaction with current counsel when that indigent defendant requests that appointed counsel be discharged and new counsel appointed). This claim concerns an unreasonable application of law, not an unreasonable determination of facts in the state court. Thus, under the AEDPA standard of review, because *Iles* is not "clearly established Federal law, as determined by the Supreme Court of the United States," the district court's grant of relief on that claim is reversed. 28 U.S.C. § 2254(d)(1).

### B.

James's other claim for habeas relief is that his waiver of appointed counsel before the state trial court was not made knowingly and intelligently. As the record makes clear, at no time did the state trial court judge ensure that James's waiver of appointed counsel was knowing and voluntary. At no time did the state trial judge explain to James the risks and dangers in proceeding *pro se*. And at no time did the state trial judge make an explicit finding that James's waiver was knowing and intelligent. Instead, the state trial judge appeared to accept, and the Ohio Court of Appeals explicitly accepted, the idea that James was attempting to delay trial and avoid the administration of justice when he tried to fire Stewart with his outbursts in front of prospective jurors and to the court after voir dire.

Neither the state trial judge nor the appeals court addressed the question of waiver, even though "courts [should] indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). As the district court pointed out, under even the AEDPA standard, the finding that James knowingly and intelligently waived

appointed counsel was a failure to apply clearly established Supreme Court precedent because of an unreasonable finding of fact. The record, and the evidentiary hearing held by Magistrate Judge Ovington, make it clear that James was not attempting to delay the trial unreasonably and was not engaging in dilatory tactics. Instead, he was attempting to deal with appointed counsel that had stated he was unprepared to go to trial and a trial court judge intent on going forward with trial regardless of appointed counsel's preparedness.

As such, James's waiver was not made knowingly and intelligently, with "eyes wide open"; the choice between unprepared counsel and self-representation is no choice at all. *Fowler v. Collins*, 253 F.3d 244, 249-50 (6th Cir. 2001) (citing *Faretta v. California*, 422 U.S. 806 (1975)). Contrary to the Warden's assertions, *Fowler* is not based on a reading of *Von Moltke v. Gillies*, 332 U.S. 708 (1948), but instead on an application of *Faretta*, which looks at all of the circumstances surrounding waiver of counsel to ensure that such waiver was knowing and intelligent.

In his reply brief, the Warden cites *King v. Bobby*, a Sixth Circuit case that held that a petitioner/defendant validly waived counsel without specific findings of knowing and intelligent waiver because that petitioner/defendant refused both self-representation and retention of counsel and had a history of switching attorneys in order to delay proceedings. 433 F.3d 483, 492-94 (6th Cir. 2006). *King* merely upholds the idea that if a defendant engages in dilatory tactics, that conduct may be sufficient to constitute valid waiver of counsel and excuse the duty of the court to explicitly ensure knowing and intelligent waiver. However, unlike *King*, but as in *Fowler*, James was not engaging in dilatory tactics, and the duty of the court was not excused. Therefore, James's waiver was not made knowingly and intelligently, and the district court's grant of relief on that claim is affirmed.

## IV.

For the foregoing reasons, we affirm the district court's grant of habeas relief on James's claim that he did not knowingly and intelligently waive counsel.

---
**CONCURRENCE**
---

ALICE M. BATCHELDER, Circuit Judge, concurring. I concur in the result reached by the lead opinion because I agree that the trial court was required to make a significantly more detailed on-the-record inquiry into James's reasons for proceeding without counsel and his understanding of the consequences of doing so. I write separately simply to note my disagreement with the lead opinion's statement – which is the underpinning of its ultimate conclusion – that "[t]he record, and the evidentiary hearing held by Magistrate Judge Ovington, make it clear that James was not attempting to delay the trial unreasonably and was not engaging in dilatory tactics."

Mr. Stewart was James's third counsel. His first attorneys were retained, and at least one of them attempted to withdraw prior to trial because James refused to cooperate with them. Although this problem was resolved, James's trial was delayed because he failed to appear on the day trial was to begin. The trial court revoked his bond; James was arrested; and the case proceeded to trial. James was convicted on one charge, but the jury was unable to reach a verdict on the others. James's retained counsel then moved to withdraw because James was now indigent.

The trial court next appointed the county public defender to represent James, but that counsel moved to withdraw after several months because James refused to talk with him about the case. The trial court granted that motion, and Mr. Stewart was appointed.

In my view, the record does not "make it clear" that James was not engaging in dilatory tactics. Neither, however, does the record make it clear that he *was* in fact simply attempting to delay the trial and to engage in dilatory tactics. While I have no doubt that this is what James was up to, I agree with the lead opinion that it was incumbent upon the trial judge to do more than he did to ensure that James's demand to proceed without counsel was knowing and voluntary.