*164 DISSENT
CLAY, Circuit Judge,
dissenting.
The uncontested record before us clearly demonstrates that Omar Pouncy was forced to choose between representing himself and being represented by unprepared counsel—sometimes referred to as a “Hobson’s Choice.” While it is undoubtedly true that Pouncy was entitled to represent himself, see Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), such a right is only properly invoked when the choice to represent oneself is made freely with “eyes open.” Id. at 835, 95 S.Ct. 2525. In Pouncy’s case, his invocation of the right to represent himself was involuntary because “the choice between unprepared counsel and self-representation is no choice at all.” James v. Brigano, 470 F.3d 636, 644 (6th Cir. 2006) (citing Fowler v. Collins, 253 F.3d 244, 249-50 (6th Cir. 2001)). Because I believe that the state courts unreasonably applied Supreme Court precedent in ruling that Pouncy’s Faretta right was not violated in spite of Pouncy being forced into a Hobson’s Choice, I respectfully dissent.
As an initial matter, it is clear that the standards announced in the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub. L. No. 104-132, 110 Stat. 1214 (1996), govern this case, meaning that we can only grant habeas relief where the state court’s reasoning is “contrary to” or constitutes an “unreasonable application” of clearly established Supreme Court law. 28 U.S.C. § 2254(d). As noted by the majority, under the “unreasonable application” prong, “a habeas court must determine what arguments or theories supported ... the state court’s decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.” Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Applying this standard, we must ask whether the state court unreasonably found that Pouncy’s invocation of his right to self-representation, along with his waiver of his right to counsel, was “knowing, voluntary, and intelligent.” Iowa v. Tovar, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).
Even with the deferential standard mandated by AEDPA, I would affirm the district court’s granting of habeas relief to Pouncy on his Hobson’s Choice claim because it cannot reasonably be said that Pouncy voluntarily waived his right to counsel in invoking his right to represent himself, as required by Faretta. See Tovar, 541 U.S. at 87-88, 124 S.Ct. 1379 (2004) (explaining that, “[w]hile the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent” (internal quotations omitted)). Instead, Pouncy was forced to make exactly the constitutionally-abhorrent choice between representing himself and being represented by unprepared counsel that this Court, along with several of our sister circuit courts, has recognized violates the Constitution.
Specifically, in James v. Brigano, this Court recognized that “the choice between unprepared counsel and self-representation is no choice at all.” 470 F.3d at 644 (citing Fowler, 253 F.3d at 249-50). In that case, the petitioner was forced to represent himself because the court-appointed attorney was admittedly unprepared for trial and the trial judge was “intent on going forward with trial regardless of appointed counsel’s preparedness.” Id. Applying the standards mandated by AEP-DA, we determined that the state court’s finding that the petitioner knowingly and voluntarily waived his right to counsel in this context was unreasonable, meaning *165 that habeas relief was appropriate. Id. Similarly, in Pazden v. Maurer, 424 F.3d 303 (3d Cir. 2005), which also applied the deferential standards mandated by AED-PA, the United States Court of Appeals for the Third Circuit held that the petitioner’s waiver of counsel was involuntary because he was forced to choose between representing himself and being represented by counsel who, among other deficiencies, had not been able to review the evidence fully nor interview all the witnesses. Id. at 315. While the judge in that case “did inquire into whether [the petitioner] knowingly, intelligently and voluntarily relinquished his Sixth Amendment rights,” he “either ignored [the petitioner’s] answers or failed to realize their constitutional significance.” Id. at 319. Therefore, the petitioner’s waiver was “not voluntary in the constitutional sense,” and the state court’s determination to the contrary constituted an unreasonable application of the law as announced by the Supreme Court. Id.
Pouncy’s case is markedly similar to those of James and Pazden. In all three cases, the petitioner was forced into representing himself because of an unprepared defense attorney, thus making the waiver of the right to an attorney involuntary. As the record makes clear, and as he himself stated on the record, Michael Breczinski, Pouncy’s defense counsel, was woefully unprepared for trial. In fact, even counsel for the Warden, when asked during oral argument in front of the district court to point to evidence in the record that showed that Breczinski actually was prepared for trial, could not come up with anything other than that Breczinski “was there” and “making arguments.” (R. 73, PagelD #6720, 6724-25.)
BreczinsM’s unpreparedness manifested itself at various points during his representation of Pouncy. Specifically, when asked by the trial judge whether there were any concerns that needed to be addressed before selecting a jury, Breczinski raised the issue of his own unpreparedness and stated that it was “problematic” for him to say whether he was ready for the trial, as he had not yet received anything from his investigator beyond an oral report stating that the investigator had not been able to find any alibi witnesses as of yet. (R. 8-7, PagelD #459.) Notably, Breczinski claims he sought the aid of an investigator in the first place because the amount of materials involved in the case was extensive, and he would have been “stretched too thin” to investigate all the leads himself. {Id. at 468.) This investigator was thus charged with interviewing “quite a number” of potential witnesses, among his other duties. (R. 8-6, PagelD #452.) When asked on the record whether both he and his investigator were looking into Pouncy’s alibi defense—the main defense that was to be used at trial—Breczinski only stated that his investigator was looking into the matter. Given these statements, it is apparent that Breczinski was heavily relying on his investigator to review the case and supply Pouncy with his alibi defense.
The investigator, however, never finished his investigation, as evidenced by his failure to provide Breczinski with a final report.[1] This failure, especially given the investigator’s reputation as a thorough investigator, should have indicated to the judge that the defense had not adequately prepared for trial. However, the judge relied instead only on the investigator’s reputation to assume that he had pursued all potential leads but failed to find any evi *166 dence that would aid in Pouncy’s defense. Based only on this assumption, in the complete absence of verification, the judge decided to continue with the trial as scheduled and to ignore Breczinski’s statement that it was problematic for him to say he was ready for trial.
As the district court noted, Breczinski’s unpreparedness was evidenced at another crucial point before jury selection. When asked to respond to the prosecutor’s motion in limine to admit into evidence a recording of a phone call in which Pouncy allegedly threatened a witness, Breczinski acquiesced to the recording’s admittance because he erroneously believed that the prosecutor had electronically traced the phone call back to Pouncy. However, even after the prosecutor corrected this unwarranted assumption and informed Breczin-ski that the call had not, in fact, been traceable, Breczinski still did not object to its admission. This failure is all the more incredible given that the only evidence the prosecution was offering to prove that Pouncy was the caller was the victims’ testimony that the voice matched Pouncy’s, even though the victims had previously had fairly little interaction with Pouncy, apart from a phone call and a brief in-person meeting. In fact, Breczinski’s failure to object to the tape’s introduction flew in the face of his earlier statement that, if the prosecution had not traced the call back to Pouncy, he would be “jumping up and down” opposing the tape’s admission. (R. 8-7, at 486.) This failure to object makes it quite clear that Breczinski was unprepared for trial in that he did not fully comprehend what evidence would be presented against his client.
Given his counsel’s performance up until the eve of trial, it was understandable that Pouncy was concerned that he was not being adequately represented. Prior to the trial’s start, Pouncy had met with Breczin-ski around six times, but each one of those meetings was short and perfunctory and, according to Pouncy, consisted mostly of Breczinski delivering paperwork. Then Pouncy heard his counsel say that he was not prepared for trial and witnessed him fail to meaningfully oppose the two motions in limine. At this point, Pouncy began asking the judge to postpone the trial, to appoint him new counsel, to allow him to hire new counsel, to allow him to represent himself as co-counsel with Breczinski, and finally, when all other options were denied, to represent himself.
The evidence establishes that Pouncy felt that he was being forced to represent himself because his only other option was to have Breczinski represent him, despite being unprepared to do so. At various points during the first day of trial, Pouncy told the judge that he did not “feel comfortable” going to trial with Breczinski representing him because he was “not getting proper representation.” (Id. at 461-62.) Even after raising these concerns, Pouncy did not finally commit to representing himself until after opening statements and direct examination of the first witness, despite the judge mentioning it several times earlier in the day.[2] In fact, because the judge would not appoint new counsel for him, Pouncy explored with the judge alternatives to representing himself and even offered to hire his own lawyer to represent him. Nevertheless, the judge foreclosed that option as well and told Pouncy that if he was going to hire a new attorney he “should have [done] it a long time ago. This is trial day today.” (Id. at 672.) The judge put the issue quite succinctly, stating that “[t]he only issue now is ... are you gonna let Mr. Breczinski rep *167 resent you or are you gonna represent yourself, that’s the only thing that’s on the table right now.” (Id.) Given these two options, Pouncy decided to represent himself. Even so, when the judge conducted the final waiver colloquy and asked Pouncy to confirm that he understood that he had the right to appointed counsel, Pouncy stated, “I don’t have [an] attorney right now.” (Id. at 688.) This statement alone illuminates the circumstances in which Pouncy found himself and reveals Pouncy’s state of mind when he decided to proceed pro se—he was being forced to represent himself because Breczinski was, in effect, not serving as counsel at all. Thus, the invocation of his right to represent himself was not the product of a voluntary choice, but instead was a coerced decision resulting from being deprived of any meaningful alternative.
The cases in which relief was not granted on a Hobson’s Choice theory, by contrast, pose markedly different factual scenarios to the one presented here. For example, in Akins v. Easterling, 648 F.3d 380 (6th Cir. 2011), this Court rejected a petitioner’s claim that he was forced to choose between representing himself and being represented by unprepared counsel because “the record does not show that his counsel was unprepared for trial.” Id. at 397. Similarly, in Wilks v. Israel, 627 F.2d 32 (7th Cir. 1980), the petitioner was denied habeas relief on his Hobson’s Choice claim because the “petitioner offered no explanation for his displeasure” with his appointed counsel. Id. at 36. In fact, in that case, there was “no indication that [counsel] was not a qualified attorney or that he was not conducting petitioner’s defense in a capable manner,” and instead, the petitioner’s only objection to his counsel was that “he preferred to have an attorney he knew.” Id. at 36 & n.4.
Here, however, the record is replete with examples of Breczinski’s unpreparedness. As discussed above, Breczinski had not obtained a final report from his investigator, to whom he had entrusted all the responsibility for interviewing witnesses, reviewing materials, and finding support for Pouncy’s alibi defense. Breczinski also conspicuously failed to realize that some of the evidence presented by the prosecution could only weakly be traced back to Pouncy, and, when apprised of the actual basis for the evidence, still failed to argue against its admission. Therefore, it is apparent .that Pouncy has made the required showing that he, was forced to choose between unprepared counsel and representing himself, and thus, any waiver was constitutionally involuntary. Given the developed factual record detailing Breczinski’s unpreparedness, as well as the clear statements Pouncy made .indicating that he was representing himself because he did not have a functioning attorney, no fair-minded jurist, could reach the conclusion that Pouncy was voluntarily choosing to represent himself. I would thus hold that the state court unreasonably applied the facts of this ease in finding that Pouncy voluntarily waived his right to counsel.
Moreover, the state court’s error cannot be excused under the doctrine of harmless error, inasmuch as a court commits structural error by- accepting an invalid waiver of the right to counsel by a pro se defendant. See Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (“Harmless-error analysis ... presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial. judge and jury.” (emphasis added)); Cordova v. Baca, 346 F.3d 924, 930 (9th Cir. 2003) (“[W]e conclude that if a criminal defendant is put on trial without counsel, and his right to counsel has not been effectively waived, he *168 is entitled to an automatic reversal of the conviction.”)• In fact, in the Faretta context generally, harmless error review is inappropriate. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Pouncy was thus not required to show any prejudice resulting from the trial court’s acceptance of his invalid waiver. Instead, Pouncy was required to show only that the waiver of his right to counsel was involuntary, a task he has undoubtedly accomplished, thus entitling him to habeas relief.
The majority, in reversing the district court’s judgment granting Pouncy habeas relief, holds that, in order for Pouncy to prevail, Breczinski’s performance must amount to ineffective assistance as defined by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Maj. Op. at 160-61. Such a holding is patently incorrect for a few, key reasons. First, as every ineffective-assistance-of-counsel challenge makes clear, Strickland requires a petitioner to establish both that counsel’s representation “fell below an objective standard of reasonableness,” id. at 688, 104 S.Ct. 2052, and that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” id. at 694, 104 S.Ct. 2052. The second component, often referred to as the prejudice prong, does not belong in the analysis of a Faretta challenge, as the Supreme Court has specifically held that a Faretta violation is structural, meaning prejudice is not necessary to succeed on such a claim. McKaskle, 465 U.S. at 177 n.8, 104 S.Ct. 944; United States v. Gonzalez-Lopez, 548 U.S. 140, 148-49, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (including “the denial of the right of self-representation” within the class of cases that “ ‘defy analysis by harmless-error standards’ because they ‘affec[t] the framework within which the trial proceeds,’ and are not ‘simply an error in the trial process itself.’ ” (alteration in original) (quoting Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).
Second, the majority’s importation of Strickland into a Faretta claim is based solely on the Seventh Circuit’s opinion in Wilks, which states that “[a] defendant may not be forced to proceed with incompetent counsel; a choice between proceeding with incompetent counsel or no counsel is in essence no choice at all.” Maj. Op. at 161 (citing Wilks, 627 F.2d at 36). Reliance on this decision is misplaced for a variety of reasons, including that the majority is adopting a standard enunciated not by the Supreme Court, but by a sister circuit whose decisions are not binding on us. AEDPA requires us to decide whether the state court unreasonably applied Supreme Court precedent, and not precedent from our own or any other circuit. See 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 102, 131 S.Ct. 770. As the majority notes, there is no Supreme Court precedent importing the test for ineffective counsel, announced in Strickland, into the Faretta context. Maj. Op. at 161-62. Instead, the cases speak purely in terms of deciding whether a waiver of the right to counsel was knowing, intelligent, and voluntary. See Tovar, 541 U.S. at 88, 124 S.Ct. 1379. The cases that are actually binding upon us, and which were decided post-AEDPA, strictly abide by this requirement and talk purely in terms of unpreparedness, not incompetence. In fact, the leading case on this issue from our Court, James v. Brigano, fails to use the word “competence,” or any of its derivatives, even once in the entire opinion. See also Akins, 648 F.3d at 397 (holding that, “although Akins’s letters reveal that he was worried about his counsel’s preparation for trial, the record does not show that his counsel was unprepared for trial”). Therefore, in this context, the *169 proper standard to address Pouncy’s Hob-son’s Choice claim is counsel’s unpreparedness, not his incompetence.
Third, while Wilks does talk in terms of a defendant being forced to proceed with incompetent counsel, at no point does Wilks equate “incompetent” with “ineffective,” as defined by Strickland. In fact, when applying the “incompetence” standard to the facts in that case, the Wilks court focused only on whether the attorney was qualified and “conducting petitioner’s defense in a capable manner,” and not whether counsel’s performance fell below an objective standard of reasonableness. Wilks, 627 F.2d at 36. Therefore, the case cannot be read to require that the petitioner demonstrate that his counsel was ineffective to the extent ordinarily required for claims of ineffective assistance of counsel. Thus, even if Wilks was binding on us, and consideration of its standards was allowed by AEDPA, it does not stand for the proposition that the majority imports upon it.
Finally, even if the majority is correct that Breczinski’s unpreparedness was required to reach the level mandated for ineffective assistance of counsel claims, Pouncy would still be entitled to habeas relief based on Breczinski’s clearly deficient performance. In the context of ineffective assistance of counsel claims, the Supreme Court has consistently held that “counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Therefore, “[i]n assessing the reasonableness of an attorney’s investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.” Wiggins v. Smith, 539 U.S. 510, 527, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
In this case, we have a supposedly reasonable attorney stating on the record that he had not completed his investigation and that he needed to investigate further before confirming that he was ready for trial. This investigation was needed to substantiate Pouncy’s alibi defense—the main defense that was to be used at trial—and therefore was of the utmost importance. Breczinski, however, delegated the entire investigation to his investigator and apparently made no attempts to undertake any of the investigation himself. On the eve of trial, despite understanding the critical nature of the investigation, Breczinski only knew that his investigator had not delivered a “final report” and that the investigator had been ill for ten days, preventing him from finishing the investigation as of two weeks before trial. Notwithstanding this knowledge, or lack thereof, Breczinski seems to have made no timely effort to apprise himself of the status of the investigation or to find another investigator to complete the investigation before trial in the event that his original investigator was unwilling or unable to complete the task. Such a lack of oversight and preparation regarding an issue so central to the defense constitutes a dereliction of Breczin-ski’s role as Pouncy’s defense counsel, and clearly was not the product of a reasonable determination that further investigation was unnecessary.
As the record makes clear, Breczinski’s failure to reasonably investigate Pouncy’s defense constitutes performance below the objective standard required for effective assistance of counsel. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052. As a result, Pouncy’s only two options were defending *170 himself or having constitutionally-deficient counsel represent him. Being forced into such a choice rendered his invocation of his right to self-representation involuntary. Moreover, the result of the proceeding would likely have been different had the state trial court ruled in Pouncy’s favor, as Pouncy clearly preferred all other outcomes to representing himself, as evidenced by his repeated requests for a continuance to allow Breczinski to better prepare for trial, for appointment of alternate counsel, and for leave to hire his own counsel. Thus, even if the standard announced by the majority was proper, Pouncy would still be entitled to habeas relief on his Hobson’s Choice claim.
Because Pouncy was forced to choose between having Breczinski represent him, despite being unprepared to do so, and representing himself, Pouncy’s waiver of his right to counsel and his invocation of his right to self-representation were not voluntary in the sense required by Faret-ta. In reaching the opposite conclusion, the state court failed to consider the testimony substantiating Pouncy’s claim that Brec-zinski was woefully unprepared for trial and that, because of Breczinski’s deficiency, Pouncy was forced to represent himself instead of being represented, in effect, by no lawyer at all. The state court’s conclusion was unreasonable in light of the dictates of Faretta and Tovar.
I would therefore affirm the decision of the district court granting Pouncy habeas relief, and I respectfully dissent.

. Such a finding is bolstered by the fact that, two weeks before the trial, Breczinski informed the court that his “investigator was sick for ten days in bed, and ... has been unable to complete all the investigation in this matter.” (R. 8-6, PagelD #452.)

. Pouncy also was likely reticent to represent himself because, as he told the judge earlier, he had not been given any of the discovery materials to review prior to the trial.