NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0065n.06

Case No. 21-1348

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 01, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHNNY TAYLOR, | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| THOMAS BELL, Warden, | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; STRANCH and DAVIS, Circuit Judges.

**DAVIS, Circuit Judge.** Johnny Taylor was convicted by a Michigan jury of armed robbery in 2014. After the Michigan Court of Appeals affirmed his conviction, Taylor, as a state prisoner, filed a petition in federal court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The United States District Court for the Western District of Michigan denied the petition and Taylor has appealed that decision. To prevail in his petition, Taylor needed to demonstrate that the state court either acted contrary to or unreasonably applied federal law as set forth by the Supreme Court. Because he has shown neither, we **AFFIRM** the district court's judgment.

**I.**

In December of 2013, Taylor was arrested and charged with the armed robbery of a gas station in violation of Michigan Compiled Laws § 750.529. Maintaining his innocence, Taylor proceeded to trial with court-appointed counsel. The Michigan Court of Appeals summarized the night of the crime as follows:

> [I]n the early morning hours of December 26, 2013, an Admiral Gas Station in Jackson, Michigan was robbed. During the robbery, the gas station attendant was struck in the head multiple times and forced at gunpoint to give the robber the money in the cash register. The robber then absconded with the money from the register, including a marked $2 bill. At trial, the clerk could not identify defendant as the robber because defendant was bundled up in a green coat that concealed his face. Likewise, there was video footage of the robbery, some of which was played for the jury, but the perpetrator's face is not visible in the footage.
>
> Police responding to the robbery were able to follow tracks from the gas station to the home of Heather Banks, a woman with whom defendant was acquainted. Even though it was after 2:00 am and her five small children were sleeping in the home, Banks testified that she let defendant into her home to make a telephone call. Further, she testified that when police arrived, she told defendant that police were looking for him, at which time defendant ran into Banks's bedroom and hid. Banks gave police permission to enter the home. However, when ordered to exit the bedroom by police, defendant refused, prompting police to deploy a police dog to find defendant in the closet of Bank's bedroom. The dog latched on to defendant's arm; but, because defendant was wearing several layers of clothing, the dog did not puncture defendant's skin. In particular, defendant was wearing a green jacket like the jacket worn by the gas station robber.
>
> After the dog apprehended defendant, defendant was taken to the hospital to make sure he was uninjured. On the way to the hospital, defendant waived his *Miranda* rights and, in response to police questioning, defendant stated that "the gun is not in the house." Additionally, when police searched the bedroom where defendant had been hiding, in the box spring of Banks's bed, near a pair of reading glasses on the floor that did not belong to Banks or her family members, police found a BB gun that looked like a handgun as well as the money from the robbery, including the tracer $2 bill. At the hospital, defendant told police that he needed his reading glasses to read some documents.

*People v. Taylor*, No. 322629, 2015 WL 7288030, at \*1 (Mich. Ct. App. Nov. 17, 2015) (per curiam).

At trial, Taylor's attorney did not make an opening statement or call any witnesses. The trial lasted for one day, and the jury deliberated for less than an hour before finding him guilty. At sentencing, Taylor continued to maintain his innocence and – for the first time – alerted the court to his trial counsel's alleged deficiencies. Specifically, Taylor claimed that during the five months leading up to trial, his lawyer visited him only one time for ten minutes on the eve of trial.

He also reported that his lawyer told him during this visit that there was no video recording of the crime; but then at trial the next day, the state showed the jury surveillance footage. Taylor's trial counsel did not respond to these claims on the record and the trial court did not address them further. The court went on to sentence Taylor to 20 to 50 years in prison as a habitual offender.

On direct appeal in the Michigan Court of Appeals, aided by appointed appellate counsel, Taylor raised claims of ineffective assistance of trial counsel. According to Taylor, his trial counsel's shortcomings were extensive: he failed to investigate or prepare for trial; failed to impeach the state's primary witness; failed to test evidence for DNA; and only met with Taylor once for ten minutes the day before trial. Taylor also identified several theories, potential witnesses, and pieces of evidence that he believed should have been, but were not, presented to the jury. Among the theories he offered was one featuring Ms. Banks's 17-year-old son as an alternative suspect; he alleged Facebook photos of the son holding guns would have supported this. Taylor also claimed to have a witness who would have testified that he knew Ms. Banks more than she had suggested at trial, and that medical records and his treating physician could have provided evidence of his inability to traverse the distance between the gas station and Ms. Banks's home in the alleged timeframe. In addition to his appellate counsel's brief, Taylor personally filed a supplemental *pro per* brief,[1] asserting additional grounds for relief—namely, that trial counsel's deficiencies fit the standards established in *United States v. Cronic*, 466 U.S. 648 (1984).

After the state responded to Taylor's claims, Taylor's appellate counsel filed an untimely motion to remand for an evidentiary hearing. Taylor attached several affidavits, including his own and those of Taylor's mother, Taylor's brother, and a cousin of Ms. Banks. In its ruling on the

---

[1] In Michigan, an indigent criminal defendant who "insists that a particular claim or claims be raised on appeal against the advice of counsel" has the right, under Standard 4 of Administrative Order 2004–6, 471 Mich. cii (2004) to file a supplemental brief in *propria persona* presenting the claims.

motion, the state appellate court reasoned that Taylor "has not demonstrated that further factual development of the record or an initial ruling by the trial court is necessary at this time in order for this [c]ourt to review the issues on appeal." Because the state appellate court denied Taylor's motion to remand for an evidentiary hearing, the affidavits were not included in the lower court record and were thus not properly before the court on appeal. *Taylor*, 2015 WL 7288030, at *3. Nonetheless, the court explained that even if it were to consider the affidavits, Taylor's claims for ineffective assistance of counsel would still fail. *Id.* at *4-5.

After exhausting his claims in state court, Taylor, proceeding *pro se*, brought a 28 U.S.C. § 2254 petition for a writ of habeas corpus in federal court claiming that the state appellate court unreasonably applied clearly established federal law—first when it did not apply the ineffective assistance of counsel standard established by *Cronic*, and again when it did not find his trial counsel ineffective under the more general standard established by *Strickland v. Washington*, 466 U.S. 668 (1984). A magistrate judge was first to review the petition and recommended denying it on the merits. On *de novo* review, the district court adopted the magistrate judge's report and recommendation as the opinion of the court and declined to issue a certificate of appealability. This court then granted Taylor a certificate of appealability on the issue of whether he was denied his Sixth Amendment right to effective assistance of trial counsel and appointed new counsel to pursue his appeal. *See* 28 U.S.C. § 2253(c).

## II.

Taylor's habeas petition is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a federal court conducting habeas review must presume that the state court's factual determinations are correct unless the petitioner rebuts that presumption by clear and convincing evidence. *James v. Brigano*,

470 F.3d 636, 643 (6th Cir. 2006) (citing 28 U.S.C. § 2254(e)(1)). Further, the court may only grant habeas relief to a state prisoner upon a finding that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court or was based on an unreasonable determination of facts considering the state court evidence. 28 U.S.C. § 2254(d). We review a district court's denial of a habeas petition *de novo*. *Miller v. Colson*, 694 F.3d 691, 695 (6th Cir. 2012).

Taylor asserts only that the Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law, and that the district court therefore erred in finding otherwise. A state court unreasonably applies clearly established federal law when it successfully identifies the relevant legal principle but is unreasonable in its application of that principle to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 407-408 (2000). The relevant inquiry is not whether the state court's conclusion was merely incorrect. *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Rather, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* Applying this highly deferential standard, the state appellate court's decision was not objectively unreasonable.

### *Cronic Framework*

Taylor first argues that the state appellate court unreasonably applied the Supreme Court's decision in *Cronic* by declining to analyze his ineffective assistance of counsel claims under its framework. 466 U.S. at 659. *Cronic* addresses particularly egregious instances of deficient representation "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," and a Sixth Amendment violation will be presumed. *Id.* at 658. One such instance is the "complete denial" of counsel at a "critical stage" of the proceedings. *Id.*

at 659. Taylor contends that his trial counsel's failure to meet with him until the day before trial is precisely the type of complete denial of counsel that the Court contemplated in *Cronic* and that this failure occurred during the critical pre-trial stage of proceedings. *See id.*

The Michigan Court of Appeals considered Taylor's *Cronic* argument and concluded that his claims were "premised on counsel's purported failures at specific points in the proceedings," and thus, "properly analyzed under *Strickland*, not *Cronic*." *Taylor*, 2015 WL 7288030, at *6. The district court likewise concluded that "[I]t is simply not possible to review the transcript of the trial and conclude that Petitioner suffered a complete denial of counsel." *Taylor v. Burt*, No. 1:17-cv-855, 2021 WL 541791 at *5 (W.D. Mich. Jan. 21, 2021).

We agree. The *Cronic* framework is quite narrow. *See Fla. v. Nixon*, 543 U.S. 175, 190 (2004). Indeed, "for *Cronic's* presumed prejudice standard to apply, counsel's 'failure must be *complete*.'" *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 696-97 (2002) (emphasis added)). That simply is not the case here. In addition to meeting with Taylor before trial, his trial counsel submitted a detailed demand for discovery, and represented him during the preliminary examination – both of which are pre-trial proceedings. Moreover, the state court found that the evidence in the record showed that defense counsel both investigated the case and put the prosecution's case to meaningful adversarial testing. These facts undermine Taylor's claim of complete absence. Cases warranting application of the *Cronic* standard have involved factual scenarios far more egregious than those underlying Taylor's petition. *See, e.g.*, *Mitchell v. Mason*, 325 F.3d 732, 744 (6th Cir. 2003) (applying *Cronic* where counsel *never* consulted with client and was suspended from practicing law for the month preceding trial); *Hunt v. Mitchell*, 261 F.3d 575, 583 (6th Cir. 2001) (applying *Cronic* where the court appointed an attorney for trial on the day trial was to begin and the attorney did not meet with defendant at all before the start of voir dire).

Trial counsel's alleged deficiencies during these pre-trial proceedings, in contrast, were not so complete as to trigger the discretely-applied *Cronic* framework. The state appellate court was thus not unreasonable in proceeding to a *Strickland* analysis.

<u>*Strickland Framework*</u>

We next turn to Taylor's claim that the state appellate court unreasonably applied the broader standard established in *Strickland*, 466 U.S. at 687, when it determined that he failed to establish his ineffective assistance of counsel claim. Under *Strickland*, a petitioner proceeding on a theory of ineffective assistance of counsel must affirmatively prove both that the attorney's performance was deficient, and that petitioner was prejudiced as a result. *Id*. As to deficient performance, the proper inquiry is whether counsel's representation sunk to the level of "incompetence under 'prevailing professional norms,'" as opposed to whether counsel simply departed from best, or even common practice. *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). And as to prejudice, the court must determine if the petitioner has demonstrated a substantial likelihood of a different outcome were it not for counsel's deficiencies. *Id*. at 112.

Because *Strickland* sets out a general standard, courts are granted additional latitude in this context. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Thus, review of a *Strickland* claim evaluated under § 2254's high deference to the state court is "doubly deferential." *Id.* What's more, trial counsel is afforded great discretion in matters of trial strategy. *Taylor*, 2015 WL 7288030, at *2-3, *6-7; *see Bell*, 535 U.S. at 698 (*Strickland* requires a defendant to "overcome the 'presumption that … the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

Applying these multiple layers of deference, the state appellate court's decision was not an unreasonable application of *Strickland*. First, the court correctly articulated the standard.

*See Taylor*, 2015 WL 7288030, at *2. It invoked the appropriate "performance" and "prejudice" prongs under *Strickland* and took each issue in turn. *Id*. at *2-7. The court engaged in a detailed analysis of Taylor's complaints about the deficiencies raised in both his appellate counsel's brief and in his own *pro per* brief. The list of deficiencies included Taylor's claims that his counsel failed to adequately analyze the footprints in the snow, fingerprints on the gun, and DNA on the coat he allegedly wore during the robbery. He also faulted counsel for failing to investigate his claim that Ms. Banks's son was the true perpetrator of the crime, returning home to stash the cash and the gun in his mother's room the night of the robbery—the same room where police apprehended Taylor. In its decision, the district court aptly captures why Taylor's claims fail; they are either contradicted or altogether unsupported by the record, or they present challenges to counsel's strategic decisions—decisions to which we owe great deference. *See Taylor*, 2021 WL 541791, at *9-10.

Without question, failing to investigate certain theories and witnesses can support a showing of deficient performance under some circumstances, as Taylor suggests. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (concluding that counsel's performance was constitutionally deficient where counsel "did not even take the first step of interviewing witnesses or requesting records"). But Taylor fails to show such deficiencies. Instead, he provides conjecture and assertions that are either unsupported or directly disputed by the record. For instance, Taylor alleges that counsel failed to procure or test various evidentiary items and failed to investigate various leads or present expert witnesses. But, as observed by the state appellate court, Taylor's trial counsel served the prosecution with extensive discovery requests and the record does not reveal what trial counsel may have ultimately received in response to those requests or who counsel did or did not investigate. *Taylor*, 2015 WL 7288030, at *3, *7. And during trial, counsel was

prepared to cross-examine witnesses and to present closing arguments. *Id.* Indeed, during his closing argument, trial counsel pointed out that (1) Taylor was not identifiable in the video of the robbery; (2) there was no fingerprint evidence even though the robber did not wear gloves; (3) police did not attempt to match the footprints leading to Banks's house to Taylor's shoes; (4) Banks's testimony about Taylor making calls while at her home was not corroborated by telephone records; and (5) Taylor's green coat had no dog bite marks despite the police dog's role in his apprehension. *Id.* at *3 n.3.

Furthermore, in analyzing Taylor's insistence that his attorney should have tested available evidence, the state appellate court allowed for the possibility that counsel was simply engaging in sound trial strategy. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to…reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). To be sure, trial counsel faced difficult decisions regarding whether to attempt to match the footprints and whether to test the jacket and gun for DNA – the results of which could have worked to Taylor's detriment. Thus, the state appellate court soundly reasoned that counsel may have strategically decided against having evidence tested in order to avoid further incriminating Taylor. *Taylor*, 2015 WL 7288030, at *6. This reasoning is buttressed by trial counsel's closing argument during which he used the state's failure to test certain items to cast doubt on the prosecution's case. *Id.* We agree with the district court's conclusion that the state appellate court's assessment of Taylor's trial counsel's performance appropriately weighed Taylor's allegations against relevant considerations, including lack of evidentiary support, contradicting record evidence, and deference to counsel's sound trial strategy. *Taylor*, 2021 WL 541791, at *10. Taken together, the state appellate court's analysis was reasonable, and well-grounded in the record.

Having determined that Taylor failed to establish his counsel's deficient performance under *Strickland*, the state appellate court still analyzed the prejudice prong. Notably, despite Taylor's numerous allegations about his counsel's deficiencies, he offers no proof of prejudice. For example, he points to no evidence in the record that the various lines of investigation he has suggested would have been fruitful, that expert witnesses he has identified would have testified as he claims, or that any DNA testing would have been favorable to his defense. Where "one is left with pure speculation on whether the outcome of the trial…could have been any different," prejudice has not been established. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004); *see also Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("In the absence of any evidence showing that [witnesses] would have offered specific favorable testimony, [petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence."). In declining to find a reasonable probability of a different outcome, the state appellate court pointed to the overwhelming evidence of Taylor's guilt. In particular, it cited evidence in the trial record showing that (1) "police followed fresh footprints from the gas station to Banks's home where they found [Taylor] hiding in a closet;" (2) "cash from the robbery was found in the room where [he] was hiding" (3) "[he] was bundled up in several layers of clothing, including a green jacket consistent with that worn by the gas station robber"; and (4) "[he] obliquely admitted his knowledge of the gun used in the robbery when he told police that 'the gun is not in the house.'" *Taylor*, 2015 WL 7288030, at *4. In aggregate, these evidentiary findings are quite damning and the state appellate court's conclusion that Taylor was not prejudiced by his counsel's alleged deficiencies, considering the weight of the evidence against him was reasonable.

Like the district court, we find that "the court of appeals' application of the *Strickland* standard was detailed and thorough." *Taylor*, 2021 WL 541791, at *5. The state court provided

ample basis for its conclusion that Taylor failed to establish ineffective assistance of counsel under *Strickland*, and that conclusion was well within the realm of reasonableness.

## II.

As an additional and final entreaty, Taylor argues that the state appellate court's denial of his untimely motion to remand for an evidentiary hearing was in and of itself an unreasonable application of *Cronic* and *Strickland*. He asserts that the appropriate remedy for this error, in the alternative to habeas relief, is for this court to remand to the district court for an evidentiary hearing. But as the state appellate court noted, Taylor failed to establish a factual predicate for any of the claims he makes in relation to potential witnesses he would call. *Taylor*, 2015 WL 7288030, at *4. Moreover, both his motion for remand and the accompanying affidavits he offered were untimely. Mich. Ct. R. 7.211(C)(1)(a) (amended 2021). The affidavits, according to state procedural rules, were thus not properly before the court. Regardless, the affidavits do not help his cause; the state appellate court later considered the affidavits attached to Taylor's motion to remand. And in an alternative analysis, the court noted that even if it were to consider the affidavits, Taylor would still be unable to show that his counsel's performance was objectively unreasonable or that he was prejudiced by such performance. *Taylor*, 2015 WL 7288030 at *4-5. The state court provided plenty of context to confirm the reasonableness of this conclusion. *Id.* at *3-5. As such, we do not find that the denial of Taylor's motion to remand was an unreasonable application of *Cronic* or *Strickland*.

In any event, this court is subject to the AEDPA's general bar against factfinding in the context of federal habeas review of state court proceedings. 28 U.S.C. § 2254(e)(2). Taylor neither alleges that his claim relies on a new rule of constitutional law that was previously unavailable, nor a factual predicate that could not have previously been discovered. *See id.* Thus, we are

foreclosed from now supplementing the record, or substituting our judgment for that of the Michigan appellate court.

## IV.

Taylor has not overcome the deference afforded to state court determinations under the AEDPA. In reviewing the evidence before it – or lack thereof – the state appellate court's determination that Taylor did not suffer from Sixth Amendment ineffective counsel was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The district court therefore properly denied Taylor's habeas petition. We **AFFIRM**.